1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

CITY OF SEATTLE,

                Plaintiff,

      v.

DONALD J. TRUMP, *et al.*,

                Defendants.

No. 17-cv-00497RAJ

**DEFENDANTS' MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
June 30, 2017

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

Defs.' Mot. to Dismiss
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................................1

LEGAL OVERVIEW .........................................................................................................4

    I.       The Executive Enjoys Broad Discretion in Enforcement of Immigration Law.............4

    II.      Executive Order 13,768 ....................................................................................5

    III.    The AG Memorandum ......................................................................................7

PROCEDURAL BACKGROUND.......................................................................................9

LEGAL STANDARD .........................................................................................................9

ARGUMENT .....................................................................................................................10

    I.       The Court Lacks Jurisdiction to Consider the City's Claims......................................10

      A.   The City's Claims Are Not Ripe for Judicial Review. ...................................11

          1.    The City Has Not Alleged a Genuine Threat of Imminent Prosecution...................12

          2.    The City's Claims Are Not Fit for Judicial Review. ..................................13

          3.    The City Fails to Establish Harm Sufficient to Justify Delay of Judicial Review.......................................................................................................14

      B.   The City Lacks Standing Because It Has Failed to Demonstrate That It Has Suffered Concrete and Immediate Injury In Fact. ...................................................15

    II.      The City Fails to State a Claim for Declaratory Relief Regarding Its Compliance with Section 1373.........................................................................................................16

    III.    The City Fails to State a Viable Tenth Amendment Claim. .......................................18

    IV.    The City Fails to State a Viable Claim that the Order Exceeds the Spending Power. 22

CONCLUSION ..................................................................................................................24

Defs.' Mot. to Dismiss - i
17-CV-00497BAT

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)..........................................................................................2, 11, 12, 14

*Alexander v. Sandoval*,
532 U.S. 275 (2001)........................................................................................................17

*Arizona Dream Act Coal. v. Brewer*,
No. 15-15307, 2017 WL 461503 (9th Cir. Feb. 2, 2017) ..............................................4

*Arizona v. United States*,
567 U.S. 387, 132 S. Ct. 2492 (2012).............................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................10, 18

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) .........................................................................................6

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009) .................................................................................10, 15

*Chen v. Schiltgen*,
No. C-94-4094, 1995 WL 317023 (N.D. Cal. May 19, 1995)......................................20

*Cty. of Santa Clara v. Trump*,
No. 17-CV-00485, 2017 WL 1459081 (N.D. Cal. Apr. 25, 2017).................................7

*Fowler Packing Co., Inc. v. Lanier*,
844 F.3d 809 (9th Cir. 2016) ........................................................................................10

*Golden v. Zwickler*,
394 U.S. 103 (1969).......................................................................................................17

*Graham v. U.S. Bank, Nat'l Assn.*,
No. 3:15–cv–0990, 2015 WL 10322087 (D. Or. Dec. 2, 2015) ...................................17

*Legal Aid Soc'y of Alameda County v. Brennan*,
608 F.2d 1319 (9th Cir.1979) .......................................................................................20

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) .................................................................................16

*Love v. United States*,
  915 F.2d 1242 (9th Cir. 1989) ...............................................................................10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................10

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ...............................................................................23

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  132 S. Ct. 2566 (2012)...........................................................................................23

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)................................................................................................14

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
  676 F.3d 829 (9th Cir. 2012) .................................................................11, 12, 13

*Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*,
  658 F.2d 1272 (9th Cir. 1981) ...............................................................................15

*Renne v. Geary*,
  501 U.S. 312 (1991)................................................................................................10

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993)..................................................................................................11

*Rincon Band of Mission Indians v. San Diego Cnty.*,
  495 F.2d 1 (9th Cir.1974) ................................................................................16, 19

*S. Dakota v. Dole*,
  483 U.S. 203 (1987)...........................................................................................21, 22

*Sampson v. Murray*,
  415 U.S. 61 (1974)..................................................................................................14

*Standard Alaska Prod. Co. v. Schaible*,
  874 F.2d 624 (9th Cir. 1989) .................................................................................12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...............................................................................................9, 15

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
  873 F.2d 1221 (9th Cir. 1989) ...............................................................................17

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

*Tenaska Washington Partners II, L.P. v. United States*,
  34 Fed. Cl. 434 (1995) ..............................................................................................7

*Texas Indus. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) ................................................................................................17

*Texas v. United States*,
  523 U.S. 296 (1998) ....................................................................................10, 11, 13

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ....................................................................11, 12, 13

*Toilet Goods Ass'n, Inc. v. Gardner*,
  387 U.S. 158 (1967) ................................................................................................14

*United States v. Guzman-Padilla*,
  573 F.3d 865 (9th Cir. 2009) ..................................................................................18

*United States v. Pickard*,
  100 F. Supp. 3d 981 (E.D. Cal. 2015) ....................................................................20

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................................ *passim*

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................11

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ................................................................................................20

*Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*,
  276 F. Supp. 2d 1046 (E.D. Cal. 2003) ..................................................................17

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ........................................................................................2, 11, 15

*Winter v. Cal. Med. Review*, Inc.,
  900 F.2d 1322 (9th Cir. 1989) ................................................................................12

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ................................................................................12

**STATUTES**

28 U.S.C. § 512 ............................................................................................................7

28 U.S.C. § 1331 ........................................................................................................17

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

28 U.S.C. § 2201-2202 .................................................................................................17

8 U.S.C. § 1103 .............................................................................................................8

8 U.S.C. § 1373 ...................................................................................................... *passim*

8 U.S.C. § 1101 .............................................................................................................4

**CONSTITUTIONAL LAW**

U.S. Const. art. II ..........................................................................................................3

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

28 C.F.R. § 0.5(c) ..........................................................................................................7

Exec. Order No. 13,536, 75 Fed. Reg. 19869 (July 20, 2012) ....................................6

Exec. Order No. 13,608, 77 Fed. Reg. 26409 ( May 1, 2012) ....................................4

Exec. Order No. 13,726, 81 Fed. Reg. 23559 (April 16, 2016) ..................................4

Exec. Order No.  13,768, 820 Fed. Reg. 8799 (Jan. 25, 2017) ........................... *passim*

82 Fed. Reg. 8 ...............................................................................................................1

**OTHER AUTHORITIES**

*Office of Legal Counsel*,
      52 Admin. L. Rev. 1303 (2000).......................................................................7, 8, 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

## <u>INTRODUCTION</u>

On January 25, 2017, the President signed Executive Order 13,768 for the declared

purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to

enforce the immigration laws of the United States."  *See* Exec. Order No. 13,768, § 1, 82 Fed.

Reg. 8,799 (Jan. 30, 2017).  Section 9(a) of the Order, which is the subject of this litigation,

establishes a policy of ensuring that state and local jurisdictions comply with 8 U.S.C. § 1373.

*Id*. § 9.  Section 1373 provides, *inter alia*, that no government entity or official may prohibit or

restrict the sending or receiving of information regarding the citizenship or immigration status of

any individual to federal immigration authorities.  8 U.S.C. § 1373.

The Executive Order is a presidential directive, directed to the Attorney General, the

Secretary of Homeland Security (the "Secretary"), and other federal officials.  Pursuant to the

plain language of Section 9(a) of the Order, and as conclusively established through subsequent

guidance issued by the Attorney General, the Order does not purport to alter the existing

requirements of Section 1373 (or any other federal law), impose new or retroactive burdens on

state or local jurisdictions, or expand the legal authority of the Secretary or the Attorney General.

*See generally* Mem. from Att'y Gen. to Dep't of Justice Grant-Making Components,

*Implementation of Executive Order 13768* (May 22, 2017) ("AG Memorandum") (attached hereto

as Exhibit 1).  Rather, the Executive Order announces the policy of the Executive Branch and

directs the Secretary and Attorney General, in their discretion and consistent with their existing

legal authority, to ensure that jurisdictions that willfully refuse to comply with Section 1373 not

be eligible to receive federal grants, except as deemed necessary for law enforcement purposes.

*Id.*; *see also* Exec. Order No. 13,768, § 9(a).

Section 9(a) of the Executive Order is not self-executing, and defendants have taken no

action against the City of Seattle (the "City") under that section.  Nevertheless, the City filed the

instant lawsuit seeking declaratory and injunctive relief to prevent defendants from taking hypothetical future actions pursuant to that authority.  The City's lawsuit is premature.  The City concedes that it has not been the subject of *any* adverse action, the Secretary has not designated the City as a "sanctuary jurisdiction" in accordance with the process contemplated in Section 9(a), and the City affirmatively states that it complies with the requirements of Section 1373.

The City cannot show any injury due to the mere existence of the Executive Order, much less establish the "concrete" and "palpable" injury needed to meet the constitutional requirement of standing.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  Moreover, because defendants have taken no action against the City under the Executive Order, "its effects [have not been] felt in a concrete way," rendering the City's pre-enforcement challenge subject to dismissal under the ripeness doctrine.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 (1977).  The City's Complaint is based on speculation concerning the Order's scope, assumptions about the manner in which the Secretary and Attorney General might interpret and implement the Order's provisions, and conjecture concerning the possibility that the City might one day be designated a "sanctuary jurisdiction" pursuant to the Order and might lose all of its federal grant funding as a result.  Such speculative assertions fall short of demonstrating concrete injury.  Indeed, the AG Memorandum clarifies that many of the assumptions underlying the City's claims – such as the City's contention that the Executive Order seeks to terminate *all* federal funding to sanctuary jurisdictions – are simply inaccurate.  *Compare* Compl. ¶ 78 (ECF No. 1), *with* AG Mem. at 1-2.  The Supreme Court has made clear that the ripeness doctrine exists to prevent courts from issuing decisions based on hypothetical circumstances – like those alleged in the Complaint – that might not occur as anticipated or might not occur at all.

Defs.' Mot. to Dismiss - 2
17-cv-00497RAJ

1       Additionally, the City has failed to state claims on which relief can be granted for general

2 declaratory relief or under the Tenth Amendment or the Spending Clause of the Constitution.

3 The City's request for a declaration regarding its compliance with Section 1373 fails because the

4 City identifies no cause of action authorizing such relief, and because the relief it seeks would

5 require the Court to render an advisory opinion, which is forbidden under Article III.  Its facial

6 Tenth Amendment challenge fails because (1) that claim is based on an interpretation of the

7 Executive Order that the Attorney General has rejected; (2) a facial constitutional claim cannot be

8 sustained against an Executive Order that merely implements executive policy and does not carry

9 the force of law; and (3) in any event, the City's cannot establish that "no set of circumstances

10 exists under which [the challenged provisions] would be valid."  *United States v. Salerno*, 481

11 U.S. 739, 745 (1987).  Similarly, its Spending Clause challenge fails because the City's

12 allegations that Section 9(a) is unconstitutionally coercive, and that it unilaterally imposes

13 ambiguous grant conditions that are unrelated to the underlying grant funding, all rely on a

14 misinterpretation of that section.

15       The Executive Order does not alter or expand the existing law that governs when the

16 Federal Government may impose or enforce conditions on federal grant programming.  Instead,

17 the President – pursuant to his express constitutional authority to ensure that federal agencies

18 "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3 – has directed agency

19 heads to utilize their existing legal authorities "to the extent consistent with law," *see* Exec. Order

20 No. 13,768, § 9, in connection with local violations of Section 1373.  In other words, the

21 Executive Order does nothing more than set policy priorities and direct certain Executive Branch

22 officials to implement those priorities through the enforcement of preexisting legal authority.  The

23 City's conjecture to the contrary does not satisfy its burden of establishing the justiciability or

Defs.' Mot. to Dismiss - 3
17-cv-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1   viability of its claims; accordingly, the Court should dismiss the Complaint pursuant to Rules

2   12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

3   **<u>LEGAL OVERVIEW</u>**

4   I.      <u>The Executive Enjoys Broad Discretion in Enforcement of Immigration Law</u>.

5           "The Government of the United States has broad, undoubted power over the subject of

6   immigration and the status of aliens."  *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492,

7   2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*,

8   Congress granted the Executive Branch significant authority to control the entry, movement, and

9   other conduct of foreign nationals in the United States.  Under the INA, the Department of

10  Homeland Security ("DHS"), the Department of Justice ("DOJ"), and other agencies of the

11  Executive Branch administer and enforce the immigration laws.  The INA permits the Executive

12  Branch to exercise considerable executive discretion to direct enforcement pursuant to federal

13  policy objectives.  *See Arizona Dream Act Coal. v. Brewer*, ___ F.3d ___, No. 15-15307, 2017

14  WL 461503, at *9-10 (9th Cir. Feb. 2, 2017) ("By necessity, the federal statutory and regulatory

15  scheme, as well as federal case law, vest the Executive with very broad discretion to determine

16  enforcement priorities.").  Several Presidents have exercised this discretion by Executive Order,

17  and they have done so in differing ways, reflecting their judgments as to how best to take care

18  that the laws of the United States be faithfully executed.  *See, e.g.*, Exec. Order No. 13,726, 81

19  Fed. Reg. 23,559 (2016) ("Suspending Entry Into the United States of Persons Contributing to the

20  Situation in Libya"); Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry

21  Into the United States of Foreign Sanctions Evaders With Respect to Iran and Syria").

22          The INA contains a number of provisions regarding the involvement of state and local

23  authorities in the enforcement of immigration law.  One of those provisions, 8 U.S.C. § 1373,

24  ensures the sharing of information between federal and state actors:

Defs.' Mot. to Dismiss - 4
17-cv-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

*Id.* § 1373(a). Section 1373 also proscribes restricting any government entity from "maintaining" information regarding the immigration status of any individual. 8 U.S.C. § 1373(b).

Well before the issuance of Executive Order 13,768, the compliance of state and local governments with Section 1373 has been of interest to federal agencies because such governments are recipients of federal grants. For example, the DOJ Inspector General issued a memorandum on May 31, 2016, as the City notes (Compl. ¶¶ 65-66), describing a concern that several state and local governments receiving federal grants were not complying with 8 U.S.C. § 1373. *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at* https://oig.justice.gov/reports/2016/1607.pdf. Although the Inspector General observed that some applications of certain local ordinances might be inconsistent with Section 1373, *id*. at 4-8, the report nevertheless noted that "no one at DHS . . . has made a formal legal determination whether certain state and local laws or policies violate Section 1373, and we are unaware of any Department of Justice decision in that regard." *Id*. at 8 n.12.

II.     Executive Order 13,768

Executive Order 13,768 seeks to "[e]nsure the faithful execution of the immigration laws," including the INA. Exec. Order 13,768 § 2(a). The Order sets forth several policies and priorities regarding enforcement of federal immigration law, and it represents a dramatic departure from the prior administration's policy of non-enforcement of certain immigration programs. *See, e.g.*, *id.* § 10(a) (directing the Secretary to reinstitute immediately the

immigration program known as "Secure Communities").

As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens who are subject to removal from the United States under the immigration laws. *Id.* § 5. Several provisions of the Order instruct officials to take actions directing future conduct, including instructions to promulgate certain regulations within one year, to take "all appropriate action" to hire additional immigration officers, to seek agreements with state and local officials under Section 287(g) of the INA (referred to above), to develop a program to ensure adequate prosecution of criminal immigration offenses, and to establish an office to provide certain services to victims of crimes committed by removable aliens. *Id.* §§ 6, 7, 8, 11, 13. Throughout, the Order specifies that federal officials are to take these actions as "permitted by law" or as "consistent with law." *Id.* §§ 7, 8, 9(a), 10(b), 12, 14, 17, 18(b). In this respect, the Order is analogous to orders issued by past administrations that have set forth specific priorities and directed federal agencies to implement those priorities, "to the extent permitted by law." *See, e.g., Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32-33 (D.C. Cir. 2002) (holding that the President may instruct his subordinates to follow certain guidance "to the extent permitted by law," which means that "if an executive agency … may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then . . . the agency [must] follow the law"); *see also* Exec. Order 13,536, 76 Fed. Reg. 3,821-3,823 (Jan. 18, 2011) (reaffirming as a policy priority certain principles of contemporary regulatory review and directing agencies "to the extent permitted by law" to take steps to promote those principles).

Section 9 of the Executive Order provides that "[i]t is the policy of the executive branch to ensure, to the fullest extent of the law, that a State, or a political subdivision of a State, shall comply with 8 U.S.C. 1373." Section 9(a) directs federal agencies to achieve that policy:

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1
2
3
4
5
6

> In furtherance of this policy, the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the Attorney General or the Secretary. The Secretary has the authority to designate, in his discretion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law.

7
8

*Id*. § 9(a).

9

III.    The AG Memorandum

10

On May 22, 2017, the Attorney General issued a memorandum that sets forth in a formal,

11

conclusive manner the administration's interpretation of the scope of the grant-eligibility

12

provision of Section 9(a).  *See* AG Mem. at 1-2.[1]  By longstanding tradition and practice, the

13

Attorney General's legal opinions are treated as authoritative by the heads of executive agencies.

14

*See, e.g.*, *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 439 (1995);

15

Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of*

16

*Legal Counsel*, 52 Admin. L. Rev. 1303, 1319-20 (2000).  The Attorney General has a statutory

17

duty to advise executive department heads on "questions of law," 28 U.S.C. § 512, and to furnish

18
19

formal legal opinions to executive agencies, 28 C.F.R. § 0.5(c).  And although the Secretary

20
21

---

22
23
24
25
26
27

[1] The AG Memorandum issued shortly after a Court in the United States District Court for the Northern District of California entered a nationwide injunction prohibiting DOJ and DHS "from enforcing Section 9(a) of the Executive Order against jurisdictions they deem as sanctuary jurisdictions."  *Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO, 2017 WL 1459081, at *29 (N.D. Cal. Apr. 25, 2017).  Despite enjoining enforcement of Section 9(a), that Court nevertheless held that DOJ and DHS may "use lawful means to enforce existing conditions of federal grants or 8 U.S.C. 1373[.]"  *Id.*  The government does not understand the injunction entered in *County of Santa Clara* as precluding the government's ability to utilize legal authority independent of the Executive Order to advance the government's law enforcement priorities.  Moreover, in light of the clarifications provided in the AG Memorandum, the government has sought reconsideration of the injunction entered in that case.  *See* Defs.' Mot for Recons., *Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO, (N.D. Cal. May 23, 2017), ECF No. 113.

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

principally administers the immigration laws, the INA provides that "the determination and ruling by the Attorney General with respect to all questions of law shall be controlling."  8 U.S.C. § 1103(c)(1).  The AG Memorandum thus conclusively establishes the scope of Section 9(a) and sets clear and consistent guidance for the applicable components of DOJ as to the parameters of the grant-eligibility provision.

Consistent with Section 9(a)'s plain text, which is directed only to the Attorney General and the Secretary, the AG Memorandum specifies that the grant-eligibility provision of Section 9(a) applies "solely to federal grants administered by [DOJ] or [DHS], and not to other sources of federal funding."  AG Mem. at 1.  The Memorandum specifies that the Executive Order does not "purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary . . .  in any respect," but rather instructs those officials to take certain action, "to the extent consistent with the law.  *Id.* at 1-2.  The AG Memorandum acknowledges that, "apart from the Executive Order, [DOJ] and [DHS], in certain circumstances, may lawfully exercise discretion over grants they administer[,]" and that Section 9(a) merely "directs the Attorney General and the Secretary . . . to exercise, as appropriate, their lawful discretion to ensure that jurisdictions that willfully refuse to comply with section 1373 are not eligible to receive" federal grants administered by DOJ or DHS.  AG Mem. at 2.  Thus, the Attorney General has directed that, where authorized, DOJ "will require jurisdictions applying for certain [DOJ] grants to certify their compliance with 8 U.S.C. § 1373 as a condition for receiving an award[,]" and that jurisdictions that fail to meet that condition "will be ineligible to receive such awards."  *Id.*  The AG Memorandum also makes clear that, with respect to Section 1373 compliance conditions, DOJ or DHS may impose such conditions only pursuant to the exercise of "existing statutory or constitutional authority," and only where "grantees will receive notice of their obligation to comply with section 1373."  *Id.*  In short, Section 9(a) directs DOJ and DHS to exercise their

Defs.' Mot. to Dismiss - 8
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

existing authority in a lawful manner to encourage jurisdictions receiving DOJ or DHS

administered grants to comply with 8 U.S.C. § 1373.

## PROCEDURAL BACKGROUND

The City filed the Complaint in this matter on March 29, 2017, seeking declaratory relief

regarding the City's compliance with Section 1373 and the constitutionality of the Executive

Order.  *See generally* Compl., Prayer for Relief ¶¶ 1-5.  The City does not allege that it has been

designated as a "sanctuary jurisdiction" under Section 9(a) of the Order, nor does it allege that

any federal funding has been withheld or revoked pursuant to the Order.  Rather, relying on a

newspaper article, the City alleges that "'Seattle will almost certainly be on [the Attorney

General's list' for punitive action[.]"  *Id.* ¶ 101 (quoting Casey Jaywork, *Trump Orders Funding

Cuts to Sanctuary Cities, Promising a Showdown with Seattle*, Seattle Weekly (Jan. 25, 2017)).

The City further alleges that, following this hypothetical future determination, defendants might

decide to withhold an indeterminate amount of federal funding from the City, or take other,

unspecified action against it.  *Id.* ¶¶ 4-5.  The City also contends that it "complies with Section

1373 and all other legal requirements," *id.* ¶ 5, and it seeks a declaration from this Court

confirming its compliance with that provision and thus confirming that it is not a "sanctuary

jurisdiction."  *Id.,* Prayer for Relief ¶¶ 1-2.

## LEGAL STANDARD

Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(1) the Federal Rules

of Civil Procedure on the grounds that the Court lacks subject-matter jurisdiction to entertain the

complaint.  The jurisdiction of a federal court is limited to "cases" and "controversies."  U.S.

Const., Art. III, § 2.  "Jurisdiction is power to declare the law, and when it ceases to exist, the

only function remaining to the court is that of announcing the fact and dismissing the cause."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  The party asserting federal court

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

jurisdiction has the burden of demonstrating its existence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Defendants also seek dismissal of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.  In evaluating a Rule 12(b)(6) argument, the Court accepts the material allegations in the Complaint as true and construes reasonable inferences in the complainant's favor.  *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  To survive a Rule 12(b)(6) motion, the factual allegations in a Complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 814 (9th Cir. 2016).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S at 678.

## **ARGUMENT**

### I.    The Court Lacks Jurisdiction to Consider the City's Claims.

Executive Order 13,768 is not self-executing, and no adverse action has been taken against the City under the Order.  Nor has the government interpreted or implemented Section 9(a) of the Order in the manner that the City predicts in its Complaint; indeed, the guidance contained in the AG Memorandum undermines many of the presumptions on which the City's claims rely.  Accordingly, because no action has been taken against the City, and because the City's claims largely "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," those claims are not ripe for adjudication.  *Texas v. United States*, 523 U.S. 296, 300 (1998); *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).  Similarly, because defendants have not taken any adverse action against the City, it cannot meet its burden of establishing a "concrete," "objective," and "palpable," injury necessary to satisfy the

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

constitutional requirement of standing. *Whitmore*, 495 U.S. at 155. Thus, the City's claims are non-justiciable under both the ripeness doctrine and the standing doctrine, and the Court lacks jurisdiction to entertain those claims.

### A.   The City's Claims Are Not Ripe for Judicial Review.

Article III of the United States Constitution requires that a dispute must be ripe for judicial consideration — that is, a controversy must have "matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). "A claim is not ripe for adjudication [under the Constitution] if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300; *see also Abbott Labs.*, 387 U.S. at 148 ("[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."). The ripeness doctrine, like other justiciability doctrines, "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993). The doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148-49.

In assessing constitutional ripeness in the context of a pre-enforcement challenge to a statutory or administrative enactment, the Ninth Circuit "require[s] plaintiffs to allege a genuine threat of imminent prosecution." *See Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). In assessing whether a plaintiff has satisfied that requirement, courts

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

consider "(1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question; (2) whether the government has communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute." *Id.*

In addition to that jurisdictional analysis, a case may be unripe for prudential reasons.  To evaluate the "prudential component of ripeness," a court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010); *see also Abbott Labs.*, 387 U.S. at 149.  "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989).  "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Winter v. Cal. Med. Review*, Inc., 900 F.2d 1322, 1325 (9th Cir. 1989).

1.  The City Has Not Alleged a Genuine Threat of Imminent Prosecution.

The City has not alleged a "genuine threat of imminent prosecution" under Section 9(a) of the Executive Order, *Thomas*, 220 F.3d at 1139, nor could it, as the Executive Order does not confer on any Executive Branch official any new authority.  *See* AG Mem. at 2.  As mentioned above, the Order serves to set certain policy priorities of the administration and to direct implementation of those priorities in a manner "consistent with the law."  Exec. Order 13,768 § 9.  Thus, to the extent the officials identified in Section 9(a) can "enforce" that provision against the City at all, they are only capable of doing so by exercising authority that exists apart from the Order itself.  *See* AG Mem. at 2.  Moreover, the City has not "articulated a concrete plan to violate" the Executive Order.  *Oklevueha Native Am. Church of Hawaii, Inc.*, 676 F.3d at 835.  To the contrary, the City contends that it complies with Section 1373.  *See* Compl. ¶ 5.  The City also cannot meet the second prong of the "genuine threat" test because it does not allege that the

Attorney General or the Secretary has "communicated a specific warning or threat to initiate proceedings" against the City under the Executive Order. *Oklevueha Native Am. Church of Hawaii, Inc.*, 676 F.3d at 835. Finally, the City points to no "history of past prosecution or enforcement" of the Order under similar circumstances, and thus fails to meet the third prong of the test. *Id.* Accordingly, the City has not alleged any facts that would establish a "genuine threat of imminent prosecution," the Court should decline to consider its pre-enforcement challenge. *Thomas*, 220 F.3d at 1139.

2.    The City's Claims Are Not Fit for Judicial Review.

The City's claims are also subject to dismissal under the prudential component of the ripeness inquiry because those claims are based on several "contingent events that may not occur as anticipated." *Texas*, 523 U.S. at 300. Specifically, the City does not allege to have been penalized in any manner pursuant to Section 9(a) of the Executive Order, nor does it allege that it has been denied any federal funding pursuant to that provision. The string of hypothetical events on which the allegations in the Complaint rest provides evidence that the City's claims are not fit for review. To entertain such claims, the Court would be required to engage in layers of speculation, including assuming that: (1) the administration will interpret Section 9(a) of the Executive Order in an unconstitutional manner; (2) the administration will make a factual determination that the City is subject to designation as a "sanctuary jurisdiction" pursuant to that section; and (3) the Secretary or the Attorney General or both will rely on those findings to take some form of adverse action against the City. Those events may not transpire as the City anticipates, or may not transpire at all. Indeed, the Attorney General has already issued guidance concerning that the challenged provision of the Executive Order that contradicts the City's position. *Compare* AG Mem. at 1-2 (providing that Section 9(a) of the Order applies solely to federal grants administered by DOJ or DHS), *with* Compl. ¶ 133 (alleging that the Executive

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

Order "purports to deny 'sanctuary jurisdictions' *all* federal grants") (emphasis in original).

Thus, delaying judicial review until there has been some concrete application of the Executive

Order would allow an opportunity for factual development of the City's claims and would avoid

judicial speculation. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)

(finding that, even where "the question presented . . . is a purely legal one[,]" the issue may not be

fit for review if the court "believe[s] that further factual development would significantly advance

[its] ability to deal with the legal issues presented").

> 3.   The City Fails to Establish Harm Sufficient to Justify Delay of Judicial Review.

The City also fails to allege harm sufficient to justify pre-enforcement review.  To satisfy

the hardship prong of the ripeness inquiry in the pre-enforcement review context, a plaintiff must

demonstrate that "irremediable adverse consequences" will result from postponing review. *Toilet*

*Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967).  "[M]ere financial expense . . . is not a

justification for pre-enforcement judicial review." *Abbott Labs.*, 387 U.S. at 153.

Here, the primary harm the City alleges is the potential loss of federal grant funding.  That

harm is monetary in nature and thus not "a sufficient interest to sustain a judicial challenge" in the

pre-enforcement context. *Abbott Labs.*, 387 U.S. at 153; *Sampson v. Murray*, 415 U.S. 61, 90

(1974) (finding that "[m]ere injuries, however substantial, in terms of money, time and energy

necessarily expended . . . are not enough" to justify injunctive relief).  Additionally, to allege its

injury, the City again relies on a series of contingent future events.  Those contingencies include

the assumptions (1) that Section 9(a) applies to *all* federal grant funding, including funding for

"infrastructure," "capital projects," and "residential programs," *see, e.g.*, Compl. ¶ 45; (2) that the

Secretary will designate the City as a "sanctuary jurisdiction" at some future point (despite the

City's simultaneous insistence that it complies with Section 1373), *see id.* ¶ 5; and (3) that "*if the*

Defs.' Mot. to Dismiss - 14
17-cv-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

city is designated" the Secretary or the Attorney General might take some form of adverse action as a result of the designation, *see id.* ¶ 106 (emphasis added).  Such allegations of harm are too speculative to justify pre-enforcement review.  *See, e.g.*, *Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*, 658 F.2d 1272, 1274 (9th Cir. 1981) (finding allegations of harm too speculative where "it was necessary to assume a series of contingencies").  Moreover, as mentioned above, many of the City's assumptions, such as the assumption that the Executive Order jeopardizes *all* of the City's federal grant funding, are demonstrably inaccurate. *See* AG Mem. at 1.  Accordingly, because the City cannot show that it faces immediate and irremediable adverse consequences from delaying review until the Order has been applied, the Court should dismiss the City's claims under the ripeness doctrine.

> **B.      The City Lacks Standing Because It Has Failed to Demonstrate That It Has Suffered Concrete and Immediate Injury In Fact.**

Related to the ripeness requirement is the constitutional requirement of standing.  *See Bova*, 564 F.3d at 1096 ("[I]f the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing . . . [i]n this way, ripeness and standing are intertwined.").  To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's conduct, and redressability. *Steel Co.*, 523 U.S. at 102-03.  The injury needed for constitutional standing must be "concrete," "objective," and "palpable," not merely "abstract" or "subjective."  *See Whitmore*, 495 U.S. at 155.  The injury also must be "certainly impending" rather than "speculative."  *Id.* at 158.

Applying these standards here, the City's alleged injuries are too speculative to meet the constitutional standing requirement.  Neither the Secretary nor the Attorney General has taken any action against the City pursuant to Section 9 of the Executive Order.  Thus, the City cannot

assert any actual "concrete," "objective," and "palpable" injury. *Id.* at 155.  Rather, the City

alleges that it suffers from "irresolvable uncertainty surrounding whether federal funds that

currently benefit all Seattle residents will be cut off *if* the city is deemed a 'sanctuary

jurisdiction.'"  *See* Compl. ¶ 106 (emphasis added).  Not only does this allegation of harm rest on

conjecture, as detailed above, but as the AG Memorandum makes clear, Section 9(a) of the

Executive Order does not expand the authority of the Attorney General or the Secretary.  Rather,

it directs those officials, consistent with the law, to exercise existing authority to ensure

compliance with 8 U.S.C. § 1373.  *See* AG Mem. at 1-2.   Statements by officials regarding an

intention "to enforce those laws which they are charged to administer do not create the necessary

injury in fact" under the standing inquiry.  *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)

(citing *Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir.1974)

(concluding that a sheriff's statement that "all of the laws of San Diego, State, Federal and

County, will be enforced within our jurisdiction" was insufficient to create a justiciable case)).

Accordingly, because the City's claimed injury is insufficient to meet the standing requirement,

the Court lacks jurisdiction to review the City's claims.

II.     The City Fails to State a Claim for Declaratory Relief Regarding Its Compliance with
        Section 1373.

        Beyond the lack of justiciability of all of the City's claims, the City also fails to state a

claim for declaratory relief regarding its compliance with the provisions of Section 1373.  *See*

Compl. ¶¶ 125-129.  That claim is subject to dismissal because the City cannot identify a cause of

action that would allow it to pursue such relief, and because the requested relief would amount to

an advisory opinion.  *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (absent statutory

intent to create a cause of action, one "does not exist and courts might not create one, no matter

how desirable that may be as a policy matter"); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)

1
2
("[T]he federal courts . . . do not render advisory opinions. . . . This is as true of declaratory judgments as any other field.").

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
The general jurisdictional statutes that the City cites, 28 U.S.C. §§ 1331 and 1346, *see* Compl. ¶ 14, do not create independent causes of action, and whether a court has subject-matter jurisdiction is a distinct question from whether a plaintiff has a cause of action. *See, e.g.*, *Texas Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) ("vesting of jurisdiction in the federal courts" does not create a cause of action). Similarly, the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, which the City cites as a jurisdictional statute, *see* Compl. ¶ 14, creates a certain *remedy* that may be available to litigants. That statute does not create a cause of action. *See Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (The DJA "only creates a remedy and is not an independent basis for jurisdiction"); *Graham v. U.S. Bank, Nat'l Assn.*, No. 3:15–cv–0990–AC, 2015 WL 10322087, at *13 (D. Or. Dec. 2, 2015) ("The [DJA] . . . does not create a cause of action; instead, it creates a remedy for existing causes of action."). Because the City cannot identify a cause of action to support its request for relief, that claim must be dismissed.

18
19
20
21
22
23
24
25
26
27
28
Moreover, "regardless of whether the relief sought is monetary, injunctive or declaratory . . . for a case to be more than a request for an advisory opinion, there must be an actual dispute between adverse litigants and a substantial likelihood that a favorable federal court decision will have some effect." *Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*, 276 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003). Here, defendants have not declared the City to be a "sanctuary jurisdiction" or as being in violation of Section 1373. The City's claim to the contrary, *see* Compl. ¶ 127, is an unsupported conclusory statement that is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 662. The City's request for declaratory relief, therefore, concerns a hypothetical legal dispute. Thus, rather than adjudicating a concrete and established

Defs.' Mot. to Dismiss - 17
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

legal controversy, rendering a declaratory judgment regarding the City's compliance with Section 1373 would constitute an advisory opinion, which is "constitutionally forbidden." *United States v. Guzman-Padilla*, 573 F.3d 865, 879 (9th Cir. 2009).

III.     The City Fails to State a Viable Tenth Amendment Claim.

The City also fails to state a claim that the Executive Order on its face violates the Tenth Amendment. The City premises its Tenth Amendment challenge on a misinterpretation of the Executive Order; the Order does not directly impose any requirements on state or local jurisdictions, as the City presumes, and thus it does not "command the States' officers" in an unconstitutional manner. *See* Compl. ¶ 131. Moreover, a Tenth Amendment challenge to an Executive Order is not appropriate where, as here, the Order merely announces and directs the implementation of executive policy. Finally, even if a Tenth Amendment challenge to the Executive Order could be sustained, the City has failed to state such a claim here because the City does not "establish that no set of circumstances exists under which the [Order] would be valid." *Salerno*, 481 U.S. at 745.

The City's Tenth Amendment claim rests on a misreading of the Executive Order. The City presumes that "the Executive Order imposes affirmative duties on state and local officials beyond those prescribed in Section 1373," and that it "penalizes Seattle for failing to perform those duties[.]" Compl. ¶ 131. The plain language of the Executive Order and the guidance contained in the AG Memorandum disprove the City's presumption. The Executive Order does not impose conditions on federal grants, nor does it impose any requirements on state or local jurisdictions. Rather, the Order "establish[es] immigration enforcement as a priority for this Administration," *see* AG Mem. at 1, in an effort to "ensure that our Nation's immigration laws are faithfully executed." Exec. Order 13,768 at 1. The Order directs the appropriate executive officials to prioritize, to the fullest extent of the law, means for achieving that priority. Those

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

means may include, for example, more aggressive enforcement of existing grant conditions, or, as the AG Memorandum suggests, tailoring future grant awards in a manner that promotes the administration's law enforcement priorities.  *See* AG Mem. at 2.

At no point, however, does the Order purport to impose directly affirmative obligations on state or local jurisdictions.  Rather, the Attorney General and the Secretary are to enforce the Order's directives "to the extent permitted by law."  Exec. Order 13,768, § 9(a).  Consistent with that directive, the Executive Order "does not call for the imposition of grant conditions that would violate any applicable constitutional or statutory limitation . . . [n]or does the Executive Order purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary . . . in any respect."  AG Mem. at 1-2.  Rather, in the event the Secretary or Attorney General determine to impose obligations on a grant program pursuant to the directives contained the Order, such as a condition certification of compliance with 8 U.S.C. § 1373, that obligation may be imposed only where existing legal authority allows, and only where grantees are given "notice of their obligation[s.]"  *Id.* at 2.  Thus, because the Executive Order does not directly impose any affirmative duties on state or local jurisdictions, the Court should reject the City's contention that the Order violates the Tenth Amendment's anti-commandeering principle.

The Court should reject the City's Tenth Amendment challenge for the independent reason that such a challenge cannot be sustained against an Executive Order that directs internal Executive Branch policy.  Courts in this Circuit have distinguished between Executive Orders that are intended to be an internal directive that "implement policy as a product of executive authority," and those that are promulgated to effectuate an authority explicitly vested in the President through an act of Congress.  *See Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023, at *5 (N.D. Cal. May 19, 1995), *aff'd sub nom. Chen v. I.N.S.*, 95 F.3d 801 (9th Cir. 1996); *Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319, 1330 n.14 (9th Cir.1979).

The former type of Executive Order does not carry an independent force of law; rather it serves as an internal Executive Branch directive. Executive Order 13,768 falls into that category. As the Attorney General made clear, the challenged provisions of the Order are directives to the Attorney General and the Secretary regarding their exercise of *existing* statutory and constitutional authority. AG Mem. at 1-2. Because the Order is an internal Executive Branch policy directive, the City cannot sustain a claim that the Order commandeers City employees in violation of the Tenth Amendment. *Cf. United States v. Pickard*, 100 F. Supp. 3d 981, 1011 (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to a statement of agency policy on the grounds that a policy statement "is a very different creature from a statute" in that it does not bind states in the manner that a statute would).

Finally, even assuming *arguendo* that the Executive Order is sufficiently comparable to a federal statute to sustain a facial constitutional challenge, the City's challenge should be dismissed because the City fails to allege that "no set of circumstances exists under which the [Order] would be valid." *Salerno*, 481 U.S. at 745. Facial challenges to federal statutes are disfavored because they "often rest on speculation[;]" "they raise the risk of premature interpretation of statutes on the basis of factually barebones records[;]" they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied[;]" and they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008). Thus, the mere possibility that Executive Order *could be* interpreted in an unconstitutional manner is insufficient to state a facial challenge.

Defs.' Mot. to Dismiss - 20
17-cv-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1
2

*See Salerno*, 481 U.S. at 745 ("The fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid").

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

      Here, the City's Complaint fails to establish that Section 9(a) of the Executive Order would be invalid under all circumstances.  The challenged provision of the Order seeks to ensure, to the extent consistent with the law, that jurisdictions that willfully refuse to comply with 8 U.S.C. § 1373, are not eligible to receive grants administered by DOJ or DHS.  *See* Exec. Order at § 9; AG Mem. at 2.  Thus, where applicants for or recipients of certain DOJ or DHS grants are required (pursuant to authority that exists independent of the Executive Order) to certify their compliance with Section 1373 as a condition for receiving an award, their failure to do so will render them "ineligible to receive such awards."  AG Mem. at 2.  Conditioning the receipt of federal funds on whether a state or local jurisdiction complies with a federal statute or takes some other action does not violate the Tenth Amendment, so long as the "State could . . . adopt the simple expedient of not yielding to what she urges is federal coercion."  *See S. Dakota v. Dole*, 483 U.S. 203, 210 (1987) (A "perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants.").  Thus, if a state or local jurisdiction were disinclined to certify compliance with Section 1373 (or disinclined to comply with any other grant provision), that jurisdiction could simply decline to participate in the grant program.  The Tenth Amendment, however, does not give States and their subdivisions the right to be free of any federal grant conditions that might be constitutionally impermissible if mandatorily imposed by Congress.  *Id.*  Accordingly, because the City fails to establish that "no set of circumstances exists under which [the Executive Order] would be valid," their facial challenge to the Order must fail.  *Salerno*, 481 U.S. at 745.

26
27
28

**IV.    The City Fails to State a Viable Claim that the Order Exceeds the Spending Power.**

The City also fails to state a claim that the directives contained in Section 9(a) violate the requirement under the Spending Clause of the Constitution that conditions on spending be non-coercive, related to the federal interest in the particular program, and unambiguous.  Compl. ¶¶ 132-35; *Dole*, 483 U.S. at 206.  Those claims rest on misinterpretation of Section 9(a); the AG Memorandum directly undermines the principle bases of those claims.

The Spending Clause provides Congress the power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *Dole*, 483 U.S. at 206.  The spending power is subject to certain limitations, including that conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation," that "conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs," and that "the financial inducement offered by Congress" must not "be so coercive as to pass the point at which pressure turns into compulsion."  *Id.* at 207-08, 211.

As a threshold matter, the City's Spending Clause claims fail for the simple reason that the Executive Order does not impose conditions on federal grant programming.  *See* AG Mem. at 1-2.  Rather, as explained above, Section 9(a) directs Executive Branch officials to exercise *existing* power in a certain manner, which may include "impos[ing] additional conditions on grantees" in the future, consistent with "applicable constitutional or statutory limitations."  *Id.* at

1-2. Thus, because the Order does not impose conditions on federal spending, the Supreme Court's Spending Clause jurisprudence is inapplicable.

The City's claim that Section 9(a) imposes unconstitutionally coercive grant conditions fails not only because that Section does impose conditions at all, but also because the directives contained in that Section "will be applied solely" to DOJ and DHS administered grants, *see* AG Mem. at 1, not to "*all* federal grants," as the City alleges.  Compl. ¶ 133.  Because Section 9(a) applies only to a limited universe of federal grants, and, with respect to DOJ, only to grant programs that "expressly contain[]" certification requirements, AG Mem. at 2, the City cannot establish that Section 9(a) imposes conditions so severe as to coerce compliance.  *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2664 (2012) ("[C]ourts should not conclude that [an enactment] is unconstitutional on [coercion] ground unless the coercive nature of an offer is unmistakably clear" such as where States are subjected to the risk of losing "over 10 percent of a State's overall budget" if they declined to adopt certain conditions).

The City's claim under the so-called "nexus" requirement similarly fails.  That requirement is only a "possible ground" for invalidating an enactment and does not impose an "exacting standard."  *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).  The AG Memorandum makes clear that Section 9(a)'s directives apply only to "certain" grants administered by DOJ (the primary federal law enforcement agency) or DHS (the federal agency responsible for the admission and removal of non-citizens), and not, as the City suggests, to "all federal funds," including those unrelated to Section 9(a)'s directives.  Compl. ¶ 133.  The City fails to identify any instance in which the defendants have imposed a condition pursuant to Section 9(a) that is unrelated to the underlying grant program.  Accordingly, the City has not stated a claim under the nexus requirement.

Defs.' Mot. to Dismiss - 23
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1        Finally, the City's claim that Section 9(a) violates the requirement that federal grant

2    conditions be stated "unambiguously" fails for the same reason: the City identifies no instance in

3    which defendants imposed an allegedly ambiguous condition on a federal grant program.  Further,

4    the AG Memorandum clarifies that grant applicants or recipients will "receive notice" of any

5     

6    obligations imposed pursuant to the Executive Order's directives.  Thus, because the City does

7    not identify any allegedly ambiguous condition, it cannot sustain its Spending Clause claim.

8    **<u>CONCLUSION</u>**

9        For the foregoing reasons, defendants respectfully request the Court dismiss the

10   Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

11

12   Date: June 5, 2017                        Respectfully submitted,

13                                          CHAD A. READLER

14                                          Acting Assistant Attorney General

15                                          JOHN R. TYLER

16                                          Assistant Director

17                                          */s/ Stephen J. Buckingham*

18                                          STEPHEN J. BUCKINGHAM (MD Bar)
                                     Special Counsel

19                                        United States Department of Justice
                                     Civil Division, Federal Programs Branch

20                                        Telephone:   (202) 514-3330
                                     Facsimile:    (202) 616-8470

21                                        E-mail:        stephen.buckingham@usdoj.gov

22                                        <u>Mailing Address</u>

23                                        Post Office Box 883
                                     Washington, D.C. 20044

24    

25                                        <u>Special Delivery Address</u>
                                     950 Pennsylvania Ave. NW

26                                        Washington, DC 20530

27

28
                                   

1

<u>CERTIFICATE OF SERVICE</u>

2

3

4

5

6

   I hereby certify that on June 5, 2017, I caused the foregoing Motion to Dismiss to be filed electronically and that this document is available for viewing and downloading from the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

7

*/s/ Stephen J. Buckingham*
Stephen J. Buckingham

8

9

<u>DECLARATION OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT</u>

10

11

12

13

14

15

   Pursuant to the Court's Standing Order for Civil Cases (Dkt. No. 22), undersigned counsel hereby declares that, on June 2, 2017, the parties engaged in good faith discussions concerning the substance of the foregoing Motion to Dismiss and potential efforts to resolve the issues raised in the Motion.  That discussion included the specific bases for the legal arguments contained in the Motion.

16

*/s/ Stephen J. Buckingham*
Stephen J. Buckingham

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Mot. to Dismiss - 25
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330