Honorable Richard A. Jones

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CITY OF SEATTLE *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP *et al.*,<br><br>          Defendants. | No. 17-cv-00497RAJ<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>August 4, 2017 |

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defs.' Mot. to Dismiss First Am. Compl.
17-CV-00497RAJ

## **<u>Table of Contents</u>**

INTRODUCTION ................................................................................................................. 1

LEGAL OVERVIEW .......................................................................................................... 4

    I.    The Executive Enjoys Broad Discretion in Enforcement of Immigration Law.................. 4

    II.   Executive Order 13,768 ......................................................................................... 5

    III.  The AG Memorandum ............................................................................................ 7

PROCEDURAL BACKGROUND ....................................................................................... 8

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT .................................................................................................................... 10

    I.    The Court Lacks Jurisdiction to Consider the Cities' Claims............................ 10

        A.   The Cities' Claims Are Not Ripe for Judicial Review............................... 10

            1.   The Cities Have Not Alleged a Genuine Threat of Imminent Enforcement. .... 12

            2.   The Cities' Claims Are Not Fit for Judicial Review. ......................................... 13

            3.   The Cities Fail to Establish Sufficient Harm Under the Ripeness
                Inquiry. ............................................................................................................. 14

        B.   The Cities Fail to Demonstrate An Injury Sufficient to Confer Standing. ............... 15

    II.   The Cities Fail to State a Claim for Declaratory Relief Under Section 1373. .................. 16

    III.  The Cities Fail to State a Viable Tenth Amendment Claim.............................................. 18

    IV.  The Cities Fail to State a Viable Claim that the Order Exceeds the
        Spending Power ................................................................................................... 21

    IV.  The Cities Fail to State a Viable Claim Under the Take Care Clause ............................ 24

CONCLUSION ................................................................................................................. 24

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1

## <u>Table of Authorities</u>

2

3

### <u>Cases</u>

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967).................................................................................................. 2, 11, 14

*Alexander v. Sandoval*,
    532 U.S. 275 (2001).......................................................................................................... 16

*Arizona Dream Act Coal. v. Brewer*,
    ___ F.3d ___, No. 15-15307, 2017 WL 461503 (9th Cir. Feb. 2, 2017)...................................... 4

*Arizona v. United States*,
    567 U.S. 387, 132 S. Ct. 2492 (2012)................................................................................. 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................... 10, 18

*Baker v. Carr*,
    369 U.S. 186 (1962)........................................................................................................... 24

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
    295 F.3d 28 (D.C. Cir. 2002)............................................................................................... 6

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) ........................................................................................ 10, 15

*Chen v. Schiltgen*,
    No. C-94-4094 MHP, 1995 WL 317023 (N.D. Cal. May 19, 1995) ........................................ 19

*Cty. of Santa Clara v. Trump*,
    No. 17-CV-00485-WHO, 2017 WL 1459081 (N.D. Cal. Apr. 25, 2017) ................................. 7

*Fowler Packing Co., Inc. v. Lanier*,
    844 F.3d 809 (9th Cir. 2016) .............................................................................................. 10

*Golden v. Zwickler*,
    394 U.S. 103 (1969)............................................................................................................ 16

*Herrera-Castanola v. Holder*,
    528 F. App'x 721 (9th Cir. 2013)......................................................................................... 17

*Hummel v. Nw. Tr. Servs., Inc.*,
    180 F. Supp. 3d 798 (W.D. Wash. 2016)................................................................................ 17

*Legal Aid Soc'y of Alameda County v. Brennan*,
    608 F.2d 1319 (9th Cir.1979) .............................................................................................. 19

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ............................................................................................... 16

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

*Love v. United States*,
915 F.2d 1242 (9th Cir. 1989) ................................................................................. 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 9, 24

*Mayweathers v. Newland*,
314 F.3d 1062 (9th Cir. 2002) ................................................................................ 23

*Mississippi v. Johnson*,
71 U.S. (4 Wall.) 475 (1866) ................................................................................. 24

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
132 S. Ct. 2566 (2012) ......................................................................................... 23

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ............................................................................................ 14

*Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*,
658 F.2d 1272 (9th Cir. 1981) ................................................................................ 14

*Portman v. County of Santa Clara*,
995 F.2d 898 (9th Cir. 1993) ................................................................................. 11

*Renne v. Geary*,
501 U.S. 312 (1991) ............................................................................................. 9

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993) .............................................................................................. 11

*S. Dakota v. Dole*,
483 U.S. 203 (1987) ....................................................................................... 21, 22

*Standard Alaska Prod. Co. v. Schaible*,
874 F.2d 624 (9th Cir. 1989) ................................................................................. 12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......................................................................................... 9, 15

*Tenaska Washington Partners II, L.P. v. United States*,
34 Fed. Cl. 434 (1995) .......................................................................................... 7

*Texas v. United States*,
523 U.S. 296 (1998) .................................................................................... 10, 11, 13

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ......................................................................... 11, 12, 13

*United States v. Guzman-Padilla*,
573 F.3d 865 (9th Cir. 2009) ................................................................................. 18

*United States v. Pickard*,
100 F. Supp. 3d 981 (E.D. Cal. 2015) ....................................................................... 20

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

*United States v. Salerno*,
481 U.S. 739 (1987) ............................................................................ 3, 18, 20, 21

*Virgin v. County of San Luis Obispo*,
201 F.3d 1141 (9th Cir. 2000) ......................................................................... 17

*Warth v. Seldin*,
422 U.S. 490 (1975) ......................................................................................... 10

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ......................................................................................... 20

*Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*,
276 F. Supp. 2d 1046 (E.D. Cal. 2003) ........................................................... 17

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ............................................................................... 2, 10, 15

*Winter v. Cal. Med. Review, Inc.*,
900 F.2d 1322 (9th Cir. 1989) .................................................................... 12, 14

*Wolfson v. Brammer*,
616 F.3d 1045 (9th Cir. 2010) ......................................................................... 12

**Statutes**

8 U.S.C. § 1101 .................................................................................................... 4

8 U.S.C. § 1103(c)(1) ........................................................................................... 7

8 U.S.C. § 1373 ............................................................................................. passim

8 U.S.C. § 1373(a) ............................................................................................... 4

28 U.S.C. § 512 .................................................................................................... 7

28 U.S.C. § 1331 ................................................................................................ 17

28 U.S.C. § 1346 ................................................................................................ 17

28 U.S.C. §§ 2201-2202 ..................................................................................... 17

U.S. Const. art. I ................................................................................................ 22

U.S. Const. art. II ................................................................................................. 3

U.S. Const. art. III ............................................................................................... 9

**Regulations**

28 C.F.R. § 0.5(c) ................................................................................................ 7

Defs.' Mot. to Dismiss First Am. Compl - iv
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

## Other Authorities

Declined Detainer Outcome Report FAQs, *available at* https://www.ice.gov/declined-detainer-outcome-report ................................................................................................................. 13

Exec. Order 13,536, 76 Fed. Reg. 3,821 (Jan. 18, 2011) ............................................................ 6

Exec. Order No. 13,768, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ............................................... passim

Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ................................................................. 4

Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ................................................................. 4

Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303 (2000) ........................................................... 7, 8, 9

Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at* https://oig.justice.gov/reports/2016/1607.pdf ............................................................. 5

Defs.' Mot. to Dismiss First Am. Compl - v
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1

## <u>INTRODUCTION</u>

2

3   On January 25, 2017, the President signed Executive Order 13,768 for the declared

4   purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to

5   enforce the immigration laws of the United States."  *See* Exec. Order No. 13,768, § 1, 82 Fed.

6   Reg. 8,799-8,803 (Jan. 30, 2017).  Section 9(a) of the Order, which is the subject of this litigation,

7   establishes a policy of ensuring that state and local jurisdictions comply with 8 U.S.C. § 1373.

8   *Id*. § 9(a).  Section 1373 provides, *inter alia*, that no government entity or official may prohibit or

9   restrict the sending or receiving of information regarding the citizenship or immigration status of

10  any individual to federal immigration authorities.  8 U.S.C. § 1373.

11  The Executive Order is a presidential directive, directed to the Attorney General, the

12  Secretary of Homeland Security (the "Secretary"), and other federal officials.  Pursuant to the

13  plain language of Section 9(a) of the Order, and as conclusively established through subsequent

14  guidance issued by the Attorney General, the Order does not purport to alter the existing

15  requirements of Section 1373 (or any other federal law), impose new or retroactive burdens on

16  state or local jurisdictions, or expand the legal authority of the Secretary or the Attorney General.

17  *See generally* Mem. from Att'y Gen. to Dep't of Justice Grant-Making Components,

18  *Implementation of Executive Order 13768* (May 22, 2017) ("AG Memorandum") (attached hereto

19  as Exhibit 1).  Rather, the Executive Order announces the policy of the Executive Branch and

20  directs the Secretary and Attorney General, in their discretion and consistent with their existing

21  legal authority, to ensure that jurisdictions that willfully refuse to comply with Section 1373 not

22  be eligible to receive federal grants, except as deemed necessary for law enforcement purposes.

23  *Id.*; *see also* Exec. Order No. 13,768, § 9(a).

24

25  Section 9(a) of the Executive Order is not self-executing, and defendants have taken no

26  action against the City of Seattle or the City of Portland (the "Cities") under that section.

27

28  Defs.' Mot. to Dismiss First Am. Compl. - 1
    17-CV-00497RAJ

Nevertheless, the Cities filed the instant lawsuit seeking declaratory and injunctive relief to prevent defendants from taking hypothetical future actions pursuant to that authority. The Cities' lawsuit is premature. The Cities concede that they have not been the subject of *any* adverse action, the Secretary has not designated them as "sanctuary jurisdictions" in accordance with the process contemplated in Section 9(a) of the Order, and the Cities affirmatively state that they comply with the requirements of Section 1373.

The Cities cannot show any injury due to the mere existence of the Executive Order, much less establish the "concrete" and "palpable" injury needed to meet the constitutional requirement of standing. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Moreover, because defendants have taken no action against the Cities under the Executive Order, "its effects [have not been] felt in a concrete way," rendering the Cities' pre-enforcement challenge subject to dismissal under the ripeness doctrine. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 (1977). The Cities' First Amended Complaint is based on speculation concerning the Order's scope, assumptions about the manner in which the Secretary and Attorney General might interpret and implement the Order's provisions, and conjecture concerning the possibility that the Cities might one day be designated as "sanctuary jurisdictions" pursuant to the Order and might lose all federal grant funding as a result. Such speculative assertions fall short of demonstrating concrete injury. Indeed, the AG Memorandum disproves many of the assumptions underlying the Cities' claims – such as the Cities' contention that the Executive Order seeks to terminate *all* federal funding to sanctuary jurisdictions. *Compare* First Am. Compl. ("FAC") ¶ 74 (ECF No. 27), *with* AG Mem. at 1-2. The Supreme Court has made clear that the ripeness doctrine exists to prevent courts from issuing decisions based on hypothetical circumstances – like those alleged in the FAC – that might not occur as anticipated or might not occur at all.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Additionally, the Cities have failed to state claims on which relief can be granted for general declaratory relief or under the Tenth Amendment to the Constitution, the Spending Clause, or the Take Care Clause.  The Cities' request for a declaration regarding their compliance with Section 1373 fails because they identify no cause of action authorizing such relief, and because issuance of that relief would require the Court to render an advisory opinion.  Their facial Tenth Amendment challenge fails because (1) it is based on a misinterpretation of the Executive Order; (2) such a claim cannot be sustained against an Executive Order that merely implements executive policy and does not carry the force of law; and (3) the Cities cannot establish that "no set of circumstances exists under which [the challenged provisions] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  The Cities' Spending Clause claim similarly rests on a misinterpretation of the Executive Order, and their Take Care Clause claim fails because the Cities cannot identify a cause of action that authorizes the relief they seek.

15
16
17
18
19
20
21
22
23
24
25
26
27

The Executive Order does not alter or expand the existing law that governs when the Federal Government may impose or enforce conditions on federal grant programming.  Instead, the President – pursuant to his express constitutional authority to ensure that federal agencies "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3 – has directed agency heads to utilize their existing legal authorities "to the extent consistent with law," *see* Exec. Order No. 13,768, § 9, in connection with local violations of Section 1373.  In other words, the Executive Order does nothing more than set policy priorities and direct certain Executive Branch officials to implement those priorities through the enforcement of preexisting legal authority.  The Cities' conjecture to the contrary does not satisfy their burden of establishing the justiciability or viability of their claims; accordingly, the Court should dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

28

Defs.' Mot. to Dismiss First Am. Compl.- 3
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

# LEGAL OVERVIEW

## I.  The Executive Enjoys Broad Discretion in Enforcement of Immigration Law.

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."  *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., Congress granted the Executive significant authority to control the entry, movement, and other conduct of foreign nationals in the United States.  Under the INA, the Department of Homeland Security ("DHS"), the Department of Justice ("DOJ"), and other federal agencies administer and enforce the immigration laws.  The INA permits the Executive to exercise "very broad discretion" to direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act Coal. v. Brewer*, ___ F.3d ___, No. 15-15307, 2017 WL 461503, at *9-10 (9th Cir. Feb. 2, 2017).  Several Presidents have exercised this discretion by Executive Order, and they have done so in differing ways, reflecting their judgments as to how best to take care that the laws of the United States be faithfully executed.  *See, e.g.*, Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ("Suspending Entry Into the United States of Persons Contributing to the Situation in Libya"); Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry Into the United States of Foreign Sanctions Evaders With Respect to Iran and Syria").

The INA contains a number of provisions regarding the involvement of state and local authorities in the enforcement of immigration law.  One of those provisions, 8 U.S.C. § 1373(a), ensures the sharing of information between federal and state actors:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

Well before the issuance of Executive Order 13,768, the compliance of state and local

Defs.' Mot. to Dismiss First Am. Compl.- 4
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

governments with Section 1373 has been of interest to federal agencies because such

governments are recipients of federal grants.  For example, the DOJ Inspector General issued a

memorandum on May 31, 2016, as the Cities note (FAC ¶¶ 98-99), describing a concern that

several state and local governments receiving federal grants were not complying with 8 U.S.C. §

1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y

Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential*

*Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at*

https://oig.justice.gov/reports/2016/1607.pdf.  Although the Inspector General observed that

certain local ordinances might be inconsistent with Section 1373, *id*. at 4-8, the report

nevertheless noted that "no one at DHS . . . has made a formal legal determination whether

certain state and local laws or policies violate Section 1373, and we are unaware of any

Department of Justice decision in that regard."  *Id*. at 8 n.12.

## II.    Executive Order 13,768

Executive Order 13,768 seeks to "[e]nsure the faithful execution of the immigration

laws," including the INA.  Exec. Order 13,768 § 2(a).  The Order sets forth several policies and

priorities regarding enforcement of federal immigration law, and it represents a dramatic

departure from the prior administration's policy of non-enforcement of certain immigration

programs.  *See, e.g.*, *id.* § 10(a) (directing the Secretary to reinstitute immediately the

immigration program known as "Secure Communities").

As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens

who are subject to removal from the United States under the immigration laws.  *Id*. § 5.  Several

provisions of the Order instruct officials to take actions directing future conduct, including

instructions to promulgate certain regulations within one year, to take "all appropriate action" to

hire additional immigration officers, to seek agreements with state and local officials where

appropriate, to develop a program to ensure adequate prosecution of criminal immigration offenses, and to establish an office to provide certain services to victims of crimes committed by removable aliens.  *Id*. §§ 6, 7, 8, 11, 13.  Throughout, the Order specifies that federal officials are to take these actions as "permitted by law" or as "consistent with law."  *Id*. §§ 7, 8, 9(a), 10(b), 12, 14, 17, 18(b).  In this respect, the Order is analogous to orders issued by past administrations that have set forth specific priorities and directed federal agencies to implement those priorities, "to the extent permitted by law."  *See, e.g.,* Exec. Order 13,536, 76 Fed. Reg. 3,821-3,823 (Jan. 18, 2011) (reaffirming as a policy priority certain principles of contemporary regulatory review and directing agencies "to the extent permitted by law" to promote those principles); *see also Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32-33 (D.C. Cir. 2002) (holding that the President may instruct his subordinates to follow certain guidance "to the extent permitted by law," which means that "if an executive agency … may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then . . . the agency [must] follow the law").

Section 9 of the Executive Order provides that "[i]t is the policy of the executive branch to ensure, to the fullest extent of the law, that a State, or a political subdivision of a State, shall comply with 8 U.S.C. 1373."  Section 9(a) directs federal agencies to achieve that policy:

> In furtherance of this policy, the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the Attorney General or the Secretary. The Secretary has the authority to designate, in his discretion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law.

*Id*. § 9(a).

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1

### III.    <u>The AG Memorandum</u>

2

3        On May 22, 2017, the Attorney General issued a memorandum that sets forth in a formal,

4  conclusive manner the administration's interpretation of the scope of the grant-eligibility

5  provision of Section 9(a).  *See* AG Mem. at 1-2.[1]  By longstanding tradition and practice, the

6  Attorney General's legal opinions are treated as authoritative by the heads of executive agencies.

7  *See, e.g.*, *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 439 (1995);

8  Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of*

9  *Legal Counsel*, 52 Admin. L. Rev. 1303, 1319-20 (2000).  The Attorney General has a statutory

10  duty to advise executive department heads on "questions of law," 28 U.S.C. § 512, and to furnish

11  formal legal opinions to executive agencies, 28 C.F.R. § 0.5(c).  And although the Secretary

12  principally administers the immigration laws, the INA provides that "the determination and ruling

13  by the Attorney General with respect to all questions of law shall be controlling."  8 U.S.C.

14  § 1103(c)(1).  The AG Memorandum thus conclusively establishes the scope of Section 9(a) and

15  sets clear and consistent guidance for the applicable components of DOJ as to the parameters of

16

17  the grant-eligibility provision.

18        Consistent with Section 9(a)'s plain text, which is directed only to the Attorney General

19  and the Secretary, the AG Memorandum specifies that the grant-eligibility provision of Section

20

21  _____

22  [1] The AG Memorandum issued shortly after a Court in the United States District Court for the Northern
District of California entered a nationwide injunction prohibiting DOJ and DHS "from enforcing Section
23  9(a) of the Executive Order against jurisdictions they deem as sanctuary jurisdictions."  *Cty. of Santa
Clara v. Trump*, No. 17-CV-00485-WHO, 2017 WL 1459081, at *29 (N.D. Cal. Apr. 25, 2017).  That
24  Court limited the scope of its injunction by providing that DOJ and DHS may "use lawful means to
enforce existing conditions of federal grants or 8 U.S.C. 1373[.]"  *Id.*  The government does not interpret
25  the injunction entered in *County of Santa Clara* as precluding the government's ability to utilize legal
authority independent of the Executive Order to advance the government's law enforcement priorities.
26  Moreover, in light of the clarifications provided in the AG Memorandum, the government has sought
reconsideration of the injunction entered in that case.  *See* Defs.' Mot for Recons., *Cty. of Santa Clara v.
27  Trump*, No. 17-CV-00485-WHO, (N.D. Cal. May 23, 2017), ECF No. 113.

28  Defs.' Mot. to Dismiss First Am. Compl.- 7                        UNITED STATES DEPARTMENT OF JUSTICE
17-CV-00497RAJ                                                      CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
                                                                        P.O. Box. 883, Ben Franklin Station
                                                                     Washington, DC 20044; (202) 514-3330

9(a) applies "solely to federal grants administered by [DOJ] or [DHS], and not to other sources of federal funding." AG Mem. at 1.  The Memorandum specifies that the Executive Order does not "purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary . . .  in any respect," but rather instructs those officials to take certain action, "to the extent consistent with the law." *Id.* at 1-2.  The AG Memorandum acknowledges that, "apart from the Executive Order, [DOJ] and [DHS], in certain circumstances, may lawfully exercise discretion over grants they administer[,]" and that Section 9(a) merely "directs the Attorney General and the Secretary . . . to exercise, as appropriate, their lawful discretion to ensure that jurisdictions that willfully refuse to comply with section 1373 are not eligible to receive" federal grants administered by DOJ or DHS. *Id.* at 2.  Thus, the Attorney General has directed that, where legally authorized, DOJ, pursuant to the Executive Order, "will require jurisdictions applying for certain [DOJ] grants to certify their compliance with 8 U.S.C. § 1373 as a condition for receiving an award[,]" and that jurisdictions that fail to meet that condition "will be ineligible to receive such awards." *Id.*  The AG Memorandum also makes clear that, with respect to Section 1373 compliance conditions, DOJ or DHS may impose a condition only pursuant to the exercise of "existing statutory or constitutional authority," and only where "grantees will receive notice of their obligation to comply with section 1373." *Id.*  In short, Section 9(a) directs DOJ and DHS to exercise their existing authority in a lawful manner to encourage jurisdictions receiving DOJ or DHS administered grants to comply with 8 U.S.C. § 1373.

## **PROCEDURAL BACKGROUND**

The Cities filed the FAC on June 26, 2017, seeking declaratory relief regarding their compliance with Section 1373 and the constitutionality of the Executive Order.  *See generally* FAC, Request for Relief ¶¶ 1-5.  The Cities do not allege that the defendants have designated them as "sanctuary jurisdictions" under Section 9(a) of the Order, nor do they allege that any

federal funding has been withheld or revoked pursuant to the Order.  Rather, relying on

newspaper articles and public statements of various federal officials, the Cities allege that the

Secretary is likely to declare them sanctuary jurisdictions at some future point, despite their

alleged compliance with 8 U.S.C. § 1373.  *See, e.g., id.* ¶ 143 (citing Casey Jaywork, *Trump*

*Orders Funding Cuts to Sanctuary Cities, Promising a Showdown with Seattle*, Seattle Weekly

(Jan. 25, 2017)).  The Cities further allege that, following this hypothetical future designation,

defendants might decide to withhold an indeterminate amount of federal funding from them, or

take other, unspecified action against them.  *Id.* ¶¶ 5-6.  The Cities contend that they "comply

with Section 1373 and all other applicable federal legal requirements," *id.* ¶ 5, and they seek a

declaration from this Court confirming their compliance with that provision and thus confirming

that they are not "sanctuary jurisdictions."  *Id.,* Request for Relief ¶¶ 1-2.

## LEGAL STANDARD

Defendants seek dismissal of the FAC pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure on the grounds that the Court lacks subject-matter jurisdiction to entertain the

FAC.  The jurisdiction of a federal court is limited to "cases" and "controversies."  U.S. Const.,

Art. III, § 2.  "Jurisdiction is power to declare the law, and when it ceases to exist, the only

function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  The party asserting federal court

jurisdiction has the burden of demonstrating its existence.  *See Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992).  Courts should "presume that [they] lack jurisdiction unless the

contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Defendants also seek dismissal of the FAC pursuant to Rule 12(b)(6) for failure to state a

claim on which relief can be granted.  In evaluating a Rule 12(b)(6) argument, the Court accepts

the material allegations in the complaint as true and construes reasonable inferences in the

Defs.' Mot. to Dismiss First Am. Compl.- 9
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

complainant's favor.  *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  To survive a Rule 12(b)(6) motion, the factual allegations in a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 814 (9th Cir. 2016).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S at 678.

## ARGUMENT

### I.   The Court Lacks Jurisdiction to Consider the Cities' Claims.

Executive Order 13,768 is not self-executing, and no adverse action has been taken against the Cities under the Order.  Nor has the government interpreted or implemented Section 9(a) of the Order in the manner that the Cities predict; indeed, the guidance contained in the AG Memorandum undermines many of the presumptions on which the Cities' claims rely. Accordingly, because no action has been taken against the Cities, and because the Cities' claims largely "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," the Court should dismiss this matter under the ripeness doctrine.  *Texas v. United States*, 523 U.S. 296, 300 (1998); *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). Similarly, because defendants have not taken any adverse action against the Cities, the Cities cannot meet their burden of establishing the "concrete," "objective," and "palpable," injury necessary to satisfy the constitutional requirement of standing.  *Whitmore*, 495 U.S. at 155.  Thus, the Cities' claims are non-justiciable under both the ripeness doctrine and the standing doctrine.

### A.   The Cities' Claims Are Not Ripe for Judicial Review.

Article III of the United States Constitution requires that a dispute must be ripe for judicial consideration — that is, a controversy must have "matured sufficiently to warrant judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975).  "A claim is not ripe for

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

adjudication [under the Constitution] if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300; *see also Abbott Labs.*, 387 U.S. at 148 ("[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution.").  The ripeness doctrine, like other justiciability doctrines, "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993).  The doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way[.]" *Abbott Labs.*, 387 U.S. at 148-49.

The Ninth Circuit has held that "the ripeness inquiry contains both a constitutional and a prudential component." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993).  In assessing the constitutional component of the ripeness inquiry in the context of a pre-enforcement challenge to a statutory or administrative enactment, a court must first satisfy itself that "there exist[s] a constitutional 'case or controversy,' [*i.e.*,] that the issues presented are definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).  In making that determination, a court will consider "whether the plaintiff faces a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement" by evaluating "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Id.*  "[N]either the mere existence of a proscriptive statute nor a generalized threat of [enforcement] satisfies the 'case or controversy' requirement." *Id.*

To evaluate the "prudential component of ripeness," a court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010); *see also Abbott Labs.*, 387 U.S. at 149. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989). "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Winter v. Cal. Med. Review*, Inc., 900 F.2d 1322, 1325 (9th Cir. 1989).

1.   <u>The Cities Have Not Alleged a Genuine Threat of Imminent Enforcement</u>.

The Cities have not alleged that they face a genuine threat of imminent enforcement of Section 9(a) of the Executive Order, nor could they, as the Executive Order does not confer on any Executive Branch official any new authority. *See* AG Mem. at 2. As mentioned above, the Order serves to set certain policy priorities of the administration and to direct implementation of those priorities in a manner "consistent with the law." Exec. Order 13,768 § 9. Thus, to the extent the officials identified in Section 9(a) can "enforce" that provision against the Cities at all, they are only capable of doing so by exercising authority that exists apart from the Order itself. *See* AG Mem. at 2. Moreover, the Cities have not "articulated a concrete plan to violate" the Executive Order. *Thomas*, 220 F.3d at 1139. To the contrary, the Cities contend that they comply with Section 1373. *See* FAC ¶ 7. The Cities also cannot meet the second prong of the "genuine threat" test because they do not allege that the Attorney General or the Secretary has "communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220 F.3d at 1139. The Cities cite to certain Declined Detainer Outcome Reports published by DHS as an indication that defendants might designate them as "sanctuary jurisdictions," *see* FAC ¶¶ 142-144, but DHS has made clear that "inclusion on [those reports] will not automatically result in

1   ineligibility for grants," and that "DHS is currently working to develop a process" to address

2   Section 9(a)'s designation requirement.  *See* Declined Detainer Outcome Report FAQs, *available*

3   *at* https://www.ice.gov/declined-detainer-outcome-report.  The Cities point to no official

4   communication of an intent to initiate an adverse enforcement action under the Executive Order.

5   Finally, the Cities fail to meet the third prong of the test because they do not identify a "history of

6   past . . . enforcement" of the Order under similar circumstances.  *Thomas*, 220 F.3d at 1139.

7   Thus, because the Cities have not alleged any facts that would establish a genuine threat of

8   imminent enforcement, the Court should reject their pre-enforcement challenge under the

9   constitutional component of the ripeness inquiry.

10

11                    2.        The Cities' Claims Are Not Fit for Judicial Review.

12          The Cities' claims are also subject to dismissal under the prudential component of the

13   ripeness inquiry because those claims are based on several "contingent events that may not occur

14   as anticipated."  *Texas*, 523 U.S. at 300.  Specifically, the Cities do not allege they have been

15   penalized in any manner pursuant to Section 9(a) of the Executive Order, nor do they allege they

16   have been denied any federal funding pursuant to that provision.  The string of hypothetical

17   events on which the allegations in the FAC rest provides evidence that the Cities' claims are not

18   fit for review.  To entertain those claims, the Court would need to assume that: (1) the

19   administration will interpret and apply Section 9(a) in an unconstitutional manner; (2) the

20   administration will make a factual determination that the Cities are subject to designation as

21   "sanctuary jurisdictions" pursuant to that section; and (3) the Secretary or the Attorney General or

22   both will rely on those findings to take some form of adverse action against the Cities.  Those

23   events may not transpire as the Cities anticipate, or may not transpire at all.  Indeed, the Attorney

24   General has already issued guidance concerning Section 9(a) that contradicts many of the Cities'

25   contentions.  *Compare* AG Mem. at 1-2 (providing that Section 9(a) of the Order applies solely to

26

27

28
Defs.' Mot. to Dismiss First Am. Compl.- 13         United States Department of Justice
17-CV-00497RAJ                                       Civil Division, Federal Programs Branch
                                                     P.O. Box. 883, Ben Franklin Station
                                                     Washington, DC 20044; (202) 514-3330

federal grants administered by DOJ or DHS), *with* FAC ¶ 185 (alleging that the Executive Order

"purports to deny 'sanctuary jurisdictions' *all* federal grants") (emphasis in original).  Thus,

delaying judicial review until there has been some concrete application of the Executive Order

would allow an opportunity for factual development of the Cities' claims and would avoid

judicial speculation.  *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)

(finding that, even where "the question presented . . . is a purely legal one[,]" the issue may not be

fit for review if the court "believe[s] that further factual development would significantly advance

[its] ability to deal with the legal issues presented").

> 3.    The Cities Fail to Establish Sufficient Harm Under the Ripeness Inquiry.

The Cities also fail to allege harm sufficient to justify pre-enforcement review.  Here, the

primary harm the Cities allege is the potential loss of federal grant funding.  That harm is

monetary in nature and thus not "a sufficient interest to sustain a judicial challenge" in the pre-

enforcement context.  *Abbott Labs.*, 387 U.S. at 153; *Winter*, 900 F.2d at 1325 ("[A] litigant must

show . . . more than possible financial loss.").  Additionally, in alleging purported injury, the

Cities again rely on a series of contingent future events.  Those contingencies include the

assumptions (1) that Section 9(a) applies to *all* federal grant funding, including, for example,

funding to support home-based care for the elderly, college readiness programs, and

transportation infrastructure, *see, e.g.*, FAC ¶¶ 63, 68, 75; (2) that the Secretary will designate the

Cities as "sanctuary jurisdictions" at some future point (despite the Cities' simultaneous

insistence that they comply with Section 1373), *see id.* ¶ 5; and (3) that "*if* the cities are deemed

to be 'sanctuary jurisdictions,'" they may face some form of adverse action, *see id.* ¶ 152

(emphasis added).  Such allegations of harm are too speculative to justify pre-enforcement

review.  *See, e.g.*, *Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*, 658

F.2d 1272, 1274 (9th Cir. 1981) (finding allegations of harm too speculative where "it was

Defs.' Mot. to Dismiss First Am. Compl.- 14
17-CV-00497RAJ

necessary to assume a series of contingencies").  Moreover, as mentioned above, many of the Cities' assumptions, such as the assumption that the Executive Order jeopardizes *all* federal funding, are demonstrably inaccurate.  *See* AG Mem. at 1.  Accordingly, because the Cities cannot show that their claims are fit for resolution or that they face immediate and irremediable adverse consequences from delaying review until the Order has been applied, the Court should dismiss their claims under the prudential component of the ripeness doctrine.

### B.       The Cities Fail to Demonstrate An Injury Sufficient to Confer Standing.

Related to the ripeness requirement is the constitutional requirement of standing.  *See Bova*, 564 F.3d at 1096 ("[I]f the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing . . . [i]n this way, ripeness and standing are intertwined.").  To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's conduct, and redressability. *Steel Co.*, 523 U.S. at 102-03.  The injury needed for constitutional standing must be "concrete," "objective," and "palpable," not merely "abstract" or "subjective." *See Whitmore*, 495 U.S. at 155.  The injury also must be "certainly impending" rather than "speculative." *Id.* at 158.

Applying these standards here, the Cities' alleged injuries are too speculative to meet the constitutional standing requirement.  Neither the Secretary nor the Attorney General has taken any action against the Cities pursuant to Section 9 of the Executive Order.  Thus, the Cities cannot assert any actual "concrete," "objective," and "palpable" injury. *Id.* at 155.  Rather, the Cities allege that they suffer from "irresolvable uncertainty surrounding whether federal funds that currently benefit all of  . . . [their] residents will be cut off *if* the cities are deemed to be 'sanctuary jurisdictions.'"  FAC ¶ 152 (emphasis added).  Not only does this allegation of harm rest on conjecture, as detailed above, but as the AG Memorandum makes clear, Section 9(a) of

the Executive Order does not expand the authority of the Attorney General or the Secretary. Rather, it merely directs those officials, consistent with the law, to exercise existing authority to ensure compliance with 8 U.S.C. § 1373.  *See* AG Mem. at 1-2.  Statements by officials regarding an intention "to enforce those laws which they are charged to administer do not create the necessary injury in fact" under the standing inquiry.  *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) (concluding that a sheriff's statement that "all of the laws of San Diego, State, Federal and County, will be enforced within our jurisdiction" was insufficient to create a justiciable case). Accordingly, because the Cities' claimed injury is insufficient to meet the standing requirement, the Court lacks jurisdiction to review the Cities' claims.

## II.     The Cities Fail to State a Claim for Declaratory Relief Under Section 1373.

Beyond the lack of justiciability of all of the Cities' claims, the Cities also fail to state a claim for declaratory relief regarding their compliance with Section 1373.  *See* FAC ¶¶ 177-181. That claim is subject to dismissal because the Cities cannot identify a cause of action that would allow them to pursue such relief.  *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (absent statutory intent to create a cause of action, one "does not exist and courts might not create one, no matter how desirable that may be as a policy matter").  Moreover, because the defendants have not designated the Cites as sanctuary jurisdictions or taken any action against them for alleged violations of Section 1373, granting the Cities their requested declaratory relief would violate the Constitution's prohibition against advisory opinions.  *See e.g.*, *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts . . . do not render advisory opinions. . . . This is as true of declaratory judgments as any other field.").

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A claim arises under federal law if "it is apparent from the face of the complaint either that (1) a federal law creates the plaintiff's cause

Defs.' Mot. to Dismiss First Am. Compl.- 16
17-CV-00497RAJ

of action; or (2) if a state law creates the cause of action, a federal law that creates a cause of

action is a necessary element of the plaintiff's claim." *Virgin v. County of San Luis Obispo*, 201

F.3d 1141, 1142–43 (9th Cir. 2000).  Here, the Cities identify no federal law that creates a cause

of action that would entitle them to a declaration regarding their purported compliance with

Section 1373.  The general jurisdictional statutes that the Cities cite, 28 U.S.C. §§ 1331 and 1346,

do not create independent causes of action.  *See, e.g.*, *Herrera-Castanola v. Holder*, 528 F. App'x

721, 722 (9th Cir. 2013) ("28 U.S.C. § 1331 . . . does not create causes of action, but only confers

jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions").

The Cities also cite to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, but that

statute creates a certain *remedy* that may be available to litigants, it does not create a cause of

action.  *Id.* (The DJA "only enlarged the range of remedies available in the federal courts but did

not extend their jurisdiction."); *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D.

Wash. 2016) (Jones, J.) ("It is well established that the [DJA] does not create an independent

cause of action . . . . As such, in the absence of a substantive cause of action, the Court cannot

grant declaratory relief.").  Thus, because the Cities fail to identify a cause of action authorizing

their requested declaratory relief, that claim must be dismissed.

Moreover, "regardless of whether the relief sought is monetary, injunctive or declaratory .

. . for a case to be more than a request for an advisory opinion, there must be an actual dispute

between adverse litigants and a substantial likelihood that a favorable federal court decision will

have some effect."  *Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*, 276

F. Supp. 2d 1046, 1050 (E.D. Cal. 2003).  Here, defendants have not designated the Cities as

"sanctuary jurisdictions" or as otherwise being in violation of Section 1373.  The Cities' claim

that "an actual controversy exists about . . . [the Cities'] compliance with that statute," *see* FAC ¶

180, is an unsupported, conclusory statement that is "not entitled to the assumption of truth."

Defs.' Mot. to Dismiss First Am. Compl.- 17
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

*Iqbal*, 556 U.S. at 662.  Thus, because the Cities' request for declaratory relief concerns a hypothetical legal dispute, issuing a declaratory judgment regarding the Cities' compliance with Section 1373 would constitute an advisory opinion, which is "constitutionally forbidden."  *United States v. Guzman-Padilla*, 573 F.3d 865, 879 (9th Cir. 2009).

### III.   The Cities Fail to State a Viable Tenth Amendment Claim.

The Cities also fail to state a claim that the Executive Order on its face violates the Tenth Amendment.  The Cities premise their Tenth Amendment challenge on a misinterpretation of the Executive Order; such a challenge is not appropriate against an Order that merely announces and directs the implementation of executive policy; and, even if a Tenth Amendment challenge to the Order could be sustained, the Cities have not "establish[ed] that no set of circumstances exists under which the [Order] would be valid."  *Salerno*, 481 U.S. at 745.

The Cities' Tenth Amendment claim rests on a misreading of the Executive Order.  The Cities presume that "the Executive Order imposes affirmative duties on state and local officials beyond those prescribed in Section 1373," and that it "penalizes [the Cities] for failing to perform those duties[.]"  FAC ¶ 183.  The plain language of the Executive Order and the guidance contained in the AG Memorandum disprove the Cities' presumption.  The Executive Order does not impose conditions on federal grants, nor does it impose any requirements on state or local jurisdictions.  Rather, the Order "establish[es] immigration enforcement as a priority for this Administration," *see* AG Mem. at 1, in an effort to "ensure that our Nation's immigration laws are faithfully executed."  Exec. Order 13,768 at 1.  The Order directs the appropriate executive officials to prioritize, to the fullest extent of the law, means for achieving that priority.  Those means may include, for example, more aggressive enforcement of existing grant conditions, or, as the AG Memorandum suggests, tailoring future grant awards in a manner that promotes the administration's law enforcement priorities.  *See* AG Mem. at 2.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

At no point, however, does the Order itself purport to impose affirmative obligations on state or local jurisdictions.  Rather, the Attorney General and the Secretary are to enforce the Order's directives only "to the extent permitted by law."  Exec. Order 13,768, § 9(a).  Consistent with that directive, the Order "does not call for the imposition of grant conditions that would violate any applicable constitutional or statutory limitation . . . [n]or does the Executive Order purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary . . . in any respect."  AG Mem. at 1-2.  Rather, in the event the Secretary or Attorney General determine to impose obligations on a grant program pursuant to the directives contained the Order, such as a condition relating to compliance with 8 U.S.C. § 1373, that obligation may be imposed only where existing legal authority allows it, and only where grantees are given "notice of their obligation[s.]"  *Id.* at 2.  Thus, because the Executive Order does not directly impose any affirmative duties on state or local jurisdictions, the Court should reject the Cities' contention that the Order violates the Tenth Amendment's anti-commandeering principle.

The Court should reject the Cities' Tenth Amendment challenge for the independent reason that such a challenge cannot be sustained against an Executive Order that directs internal Executive Branch policy.  In considering the judicial enforceability of Executive Orders, courts in this Circuit have distinguished between Executive Orders that are intended to be internal directives that "implement policy as a product of executive authority," and those that are promulgated to effectuate an authority explicitly vested in the President through an act of Congress.  *See Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023, at *5 (N.D. Cal. May 19, 1995), *aff'd sub nom. Chen v. I.N.S.*, 95 F.3d 801 (9th Cir. 1996); *Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319, 1330 n.14 (9th Cir.1979).  The former type of Executive Order does not carry an independent force of law; rather, it serves merely as an internal Executive Branch directive.  Executive Order 13,768 falls into that category.  As the Attorney General made

Defs.' Mot. to Dismiss First Am. Compl.- 19
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

clear, the challenged provisions of the Order are directives to Executive officials regarding their exercise of *existing* statutory and constitutional authority.  AG Mem. at 1-2.  Because the Order is an internal Executive Branch policy directive, the Cities cannot sustain a claim that the Order carries the force of law sufficiently broad to commandeer City employees in violation of the Tenth Amendment.  *Cf. United States v. Pickard*, 100 F. Supp. 3d 981, 1011 (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to a policy statement because such a statement "is a very different creature from a statute" in that it does not bind states in the manner that a statute would).

Finally, even assuming *arguendo* that the Executive Order is sufficiently comparable to a federal statute to sustain a facial constitutional challenge, the Cities' challenge should be dismissed because they fail to allege that "no set of circumstances exists under which the [Order] would be valid."  *Salerno*, 481 U.S. at 745.  Facial challenges to federal statutes are disfavored because they "often rest on speculation[;]" "they raise the risk of premature interpretation of statutes on the basis of factually barebones records[;]" they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied[;]" and they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008).  Thus, the mere possibility that the Executive Order *could be* interpreted in an unconstitutional manner is insufficient to state a facial challenge.  *See Salerno*, 481 U.S. at 745 ("The fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.").

Here, the Cities fail to establish that Section 9(a) of the Executive Order would be invalid under all circumstances.  The challenged provision of the Order seeks to ensure, to the extent

Defs.' Mot. to Dismiss First Am. Compl.- 20
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

consistent with the law, that jurisdictions that willfully refuse to comply with 8 U.S.C. § 1373 are not eligible to receive grants administered by DOJ or DHS.  *See* Exec. Order at § 9; AG Mem. at 2.  Thus, where applicants for or recipients of certain DOJ or DHS grants are required (pursuant to authority that exists independent of the Executive Order) to certify their compliance with Section 1373 as a condition for receiving an award, their failure to do so will render them "ineligible to receive such awards."  AG Mem. at 2.  Conditioning the receipt of federal funds on whether a state or local jurisdiction complies with a federal statute or takes some other action does not violate the Tenth Amendment, so long as the "State could . . . adopt the simple expedient of not yielding to what she urges is federal coercion."  *See S. Dakota v. Dole*, 483 U.S. 203, 210 (1987) (A "perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants.").  Thus, if a state or local jurisdiction were disinclined to certify compliance with Section 1373 (or disinclined to comply with any other grant provision), that jurisdiction could simply decline to participate in the grant program.  The Tenth Amendment, however, does not give States and their subdivisions the right to be free of any federal grant conditions that might be constitutionally impermissible if mandatorily imposed by Congress.  *Id.*  Accordingly, because the Cities fail to establish that "no set of circumstances exists under which [the Executive Order] would be valid," their facial challenge to the Order must fail.  *Salerno*, 481 U.S. at 745.

## IV.   The Cities Fail to State a Viable Claim that the Order Exceeds the Spending Power.

The Cities also fail to state a claim that the directives contained in Section 9(a) violate the requirement under the Spending Clause of the Constitution that conditions on spending be non-coercive, related to the federal interest in the particular program, and unambiguous.  FAC ¶¶ 184-187; *Dole*, 483 U.S. at 206.  Those claims rest on misinterpretation of Section 9(a); the AG Memorandum directly undermines the principle bases of those claims.

The Spending Clause provides Congress the power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *Dole*, 483 U.S. at 206.  The spending power is subject to certain limitations, including that conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation;" that "conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs;" and that "the financial inducement offered by Congress" must not "be so coercive as to pass the point at which pressure turns into compulsion."  *Id.* at 207-08, 211.

As a threshold matter, the Cities' Spending Clause claims fail for the simple reason that the Executive Order does not impose conditions on federal grant programming.  *See* AG Mem. at 1-2.  Rather, as explained above, Section 9(a) directs Executive Branch officials to exercise *existing* power in a certain manner, which may include "impos[ing] additional conditions on grantees" in the future, consistent with "applicable constitutional or statutory limitations."  *Id.* Thus, because the Order does not impose new or retroactive conditions on federal spending, the Supreme Court's conditional spending jurisprudence is inapplicable here.

The Cities' claim that Section 9(a) imposes unconstitutionally coercive grant conditions, fails not only because Section 9(a) does not impose conditions at all, but also because the directives contained in that Section "will be applied solely" to DOJ and DHS administered grants, *see* AG Mem. at 1, not to "*all* federal grants," as the Cities presume.  FAC ¶ 185.  Because Section 9(a) applies only to a limited universe of federal grants, and, with respect to DOJ, only to

grant programs that "expressly contain[]" certification requirements, AG Mem. at 2, the Cities cannot establish that Section 9(a) imposes conditions so severe as to coerce compliance. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2664 (2012) ("[C]ourts should not conclude that [an enactment] is unconstitutional on [coercion] ground unless the coercive nature of an offer is unmistakably clear" such as where States are subjected to the risk of losing "over 10 percent of a State's overall budget" if they declined to adopt certain conditions).

The Cities' claim under the so-called "nexus" requirement similarly fails. *See* FAC ¶ 186. That requirement is only a "possible ground" for invalidating an enactment and does not impose an "exacting standard." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). The AG Memorandum makes clear that Section 9(a)'s directives apply only to "certain" grants administered by DOJ (the primary federal law enforcement agency) or DHS (the federal agency responsible for the admission and removal of non-citizens), and not, as the Cities suggest, to "all federal grants," including those unrelated to Section 9(a)'s directives. FAC ¶ 186. The Cities fail to identify any instance in which the defendants have imposed a condition pursuant to Section 9(a) that is unrelated to the underlying grant program. Accordingly, the Cities have not stated a claim under the nexus requirement.

Finally, the Cities' claim that Section 9(a) violates the requirement that federal grant conditions be stated "unambiguously" fails for the same reason: Section 9(a) does not directly impose conditions on federal grants, and the Cities identify no instance in which defendants have imposed an allegedly ambiguous condition on a federal grant program. *See* FAC ¶ 187. Further, the AG Memorandum clarifies that grant applicants or recipients will "receive notice" of any obligations imposed pursuant to the Executive Order's directives. Thus, because the Cities do not identify any allegedly ambiguous conditions, they cannot sustain their Spending Clause claim.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

IV.     **The Cities Fail to State a Viable Claim Under the Take Care Clause.**

The Cities' effort to proceed under the Take Care Clause is also subject to dismissal.  FAC ¶ 189.  The Supreme Court has long recognized that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" is "purely executive and political," and not subject to judicial direction.  *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866).  Thus, the Cities' Take Care Clause claim is not justiciable.  Moreover, the Cities identify no cause of action, whether under the Administrative Procedure Act ("APA") or the Clause itself, which would authorize a suit challenging the President's actions or inaction under the Clause.  Indeed, recognizing such a cause of action would express a "lack of the respect due" to the Nation's highest elected official, *Baker v. Carr*, 369 U.S. 186, 217 (1962), by assuming judicial superintendence over the exercise of Executive power that the Take Care Clause commits to the President.  *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (Permitting a cause of action under the Take Care Clause "would enable the courts . . . to assume a position of authority over the governmental acts of another and co-equal department . . . and to become virtually continuing monitors of the wisdom and soundness of Executive action.").  Because the Cities identify no cause of action that would allow the Court to compel presidential action or inaction under the Take Care Clause, their claim for relief under that Clause must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request the Court dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defs.' Mot. to Dismiss First Am. Compl.- 24
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

Date: July 10, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director


*/s/ Stephen J. Buckingham*
STEPHEN J. BUCKINGHAM (MD Bar)
Special Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone:   (202) 514-3330
Facsimile:    (202) 616-8470
E-mail:        stephen.buckingham@usdoj.gov

Mailing Address
Post Office Box 883
Washington, D.C. 20044

Special Delivery Address
950 Pennsylvania Ave. NW
Washington, DC 20530

Defs.' Mot. to Dismiss First Am. Compl.- 25
17-CV-00497RAJ

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box. 883, Ben Franklin Station
Washington, DC 20044; (202) 514-3330

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on July 10, 2017, I caused the foregoing Motion to Dismiss the First

3

Amended Complaint to be filed electronically and that this document is available for viewing and

4

downloading from the CM/ECF system.  Participants in the case who are registered CM/ECF

5

users will be served by the CM/ECF system.

6

7

*/s/ Stephen J. Buckingham*
Stephen J. Buckingham

8

9

<u>DECLARATION OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT</u>

10

Pursuant to the Court's Standing Order for Civil Cases (Dkt. No. 22), undersigned counsel

11

hereby declares that, on July 7, 2017, the parties engaged in good faith discussions concerning the

12

substance of the foregoing Motion to Dismiss and potential efforts to resolve the issues raised in

13

the Motion.  That discussion included the specific bases for the legal arguments contained in the

14

Motion.

15

16

*/s/ Stephen J. Buckingham*
Stephen J. Buckingham

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Mot. to Dismiss First Am. Compl.- 26
17-CV-00497RAJ