Honorable Richard A. Jones

1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
10 **AT SEATTLE**

11

12 CITY OF SEATTLE and CITY OF
PORTLAND,
13
Case No. 1:17-cv-00497-RAJ
Plaintiffs,
14
**PLAINTIFFS' OPPOSITION TO**
vs. **DEFENDANTS' MOTION TO DISMISS**
15 **THE FIRST AMENDED COMPLAINT**

16 DONALD J. TRUMP *et al.*,
NOTE ON MOTION CALENDAR:
Defendants. August 4, 2017
17

18

19

20

21

22

23

24

25

26

27
PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS          **PETER S. HOLMES**
28 CASE NO. 1:17-CV-00497-RAJ                                Seattle City Attorney
                                                            701 Fifth Avenue, Suite 2050
                                                            Seattle, WA 98104
                                                            (206) 984-8200

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ............................................................................................... 2

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ................................................................................................... 5

    I.      THE SESSIONS MEMORANDUM DOES NOT AND CANNOT LIMIT
            THE SCOPE OF THE EXECUTIVE ORDER. ................................................. 5

           A.    The Sessions Memorandum Is Not Legally Binding, Does Not
                Purport To Bind Other Federal Agencies, And May Be Revoked
                At Will. .......................................................................................... 6

           B.    The Sessions Memorandum Is Not Binding Because It Contradicts
                The Executive Order's Plain Text............................................................ 8

    II.     THE CITIES' CLAIMS ARE JUSTICIABLE. .................................................. 10

           A.    The Cities Have Standing. ..................................................................... 10

           B.    The Cities' Claims Are Ripe For Judicial Review................................... 14

    III.    THE CITIES HAVE STATED A CLAIM FOR DECLARATORY
            RELIEF........................................................................................... 18

    IV.    THE CITIES HAVE STATED A TENTH AMENDMENT CLAIM. ................. 19

    V.     THE CITIES HAVE STATED A SPENDING POWER CLAIM. ..................... 22

    VI.    THE CITIES HAVE STATED A CLAIM UNDER THE TAKE CARE
            CLAUSE. ........................................................................................ 24

CONCLUSION............................................................................................... 24

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)..................................................................................16, 18

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982)..............................................................................................11

*Aluminium v. Hunter Eng'g Co.*,
   655 F.2d 938 (9th Cir. 1981) ...............................................................................19

*Andrus v. Glover Const. Co.*,
   446 U.S. 608 (1980)................................................................................................9

*Arizona Right to Life Political Action Comm. v. Bayless*,
   320 F.3d 1002 (9th Cir. 2003) .............................................................................15

*Bassidji v. Goe*,
   413 F.3d 928 (9th Cir. 2005) ............................................................................8, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................5

*Bishop Paiute Tribe v. Inyo Cty.*,
   -- F.3d --, 2017 WL 3044643 (9th Cir. July 19, 2017) ...............................12, 13, 14

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)................................................................................................8

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   136 F.3d 1360 (9th Cir. 1998) .............................................................................20

*California Pro-Life Council, Inc. v. Getman*,
   328 F.3d 1088 (9th Cir. 2003) .............................................................................15

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ...............................................................................5

*Cherichel v. Holder*,
   591 F.3d 1002 (8th Cir. 2010) ...............................................................................8

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012)................................................................................................8

ii

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*City and County of San Francisco v. Sessions*,
   No. 4:17-cv-4642 (N.D. Cal. 2017) ......................................................................21

*City of Chicago v. Sessions*,
   No. 1:17-cv-5720 (N.D. Ill. 2017) ......................................................................21

*City of Los Angeles v. Patel*,
   135 S. Ct. 2443 (2015)........................................................................................21

*Clinton v. City of New York*,
   524 U.S. 417 (1998)............................................................................................24

*Cnty. of Santa Clara v. Trump*,
   2017 WL 1459081 (N.D. Cal. Apr. 25, 2017) ............................................. *passim*

*Cnty. of Santa Clara v. Trump*,
   2017 WL 3086064 (N.D. Cal. July 20, 2017).............................................. *passim*

*In re Coleman*,
   560 F.3d 1000 (9th Cir. 2009) ...........................................................................17

*Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*,
   915 F.2d 167 (5th Cir. 1990) .............................................................................19

*Virginia ex rel. Cuccinelli v. Sebelius*,
   656 F.3d 253 (4th Cir. 2011) .............................................................................12

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ...............................................................................5

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)..............................................................................................9

*Hibbs v. Winn*,
   542 U.S. 88 (2004)..............................................................................................10

*Japan Gas Lighter Assoc. v. Ronson Corp.*,
   257 F. Supp. 219 (D.N.J. 1966) ........................................................................19

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010) .............................................................................13

*LSO, Ltd. v. Stroh*,
   205 F.3d 1146 (9th Cir. 2000) ...........................................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................11

iii

| PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS | **PETER S. HOLMES** |
|---|---|
| CASE NO. 1:17-CV-00497-RAJ | Seattle City Attorney<br>701 Fifth Avenue, Suite 2050<br>Seattle, WA 98104<br>(206) 984-8200 |

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
    526 U.S. 172 (1999)........................................................................................................8

*Montana Envtl. Info. Ctr. v. Stone-Manning*,
    766 F.3d 1184 (9th Cir. 2014) .....................................................................................17

*N.M. State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) .......................................................................................5

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002) .......................................................................................17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012)..........................................................................................20, 22, 24

*Nat'l Inst. of Family & Life Advocates v. Harris*,
    839 F.3d 823 (9th Cir. 2016) ..................................................................................16, 18

*New York v. United States*,
    505 U.S. 144 (1992)..........................................................................................19, 21, 22

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ......................................................................................8, 10

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) .......................................................................................15

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015) .......................................................................................14

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981)..........................................................................................................22

*Perez v. Mortg. Bankers Ass'n*,
    135 S. Ct. 1199 (2015)....................................................................................................6

*Printz v. United States*,
    521 U.S. 898 (1997)................................................................................................19, 20

*S. Dakota v. Dole*,
    483 U.S. 203 (1987)..........................................................................................22, 23, 24

*Sandell v. F.A.A.*,
    923 F.2d 661 (9th Cir. 1990) .......................................................................................17

*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*,
    771 F.3d 632 (9th Cir. 2014) .......................................................................................19

iv

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) ...............................................................................11

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...............................................................................................8

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .............................................................15, 17, 18

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014).................................................................................11, 17

*Tenaska Washington Partners II, L.P. v. United States*,
    34 Fed. Cl. 434 (1995) ..........................................................................................7

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ...........................................................14, 15, 17

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017).........................................................................................1

*United States v. Cabaccang*,
    332 F.3d 622 (9th Cir. 2003) (en banc) ..............................................................9

*United States v. Juarez-Escobar*,
    25 F. Supp. 3d 774 (W.D. Pa. 2014).....................................................................4

*United States v. Mead Corp.*,
    533 U.S. 218 (2001)...............................................................................................8

*United States v. Salerno*,
    481 U.S. 739 (1987)...........................................................................................21

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) .........................................................................16

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*,
    726 F.3d 524 (5th Cir. 2013) ...............................................................................4

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) .............................................................................6

*Watt v. Energy Action Educ. Found.*,
    454 U.S. 151 (1981)...........................................................................................14

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ...................................................................14, 17

v

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
   566 U.S. 189 (2012) ................................................................................................. 24

**Statutes, Rules, and Regulations**

8 U.S.C.
   § 1103(a)(1) .......................................................................................................... 7
   § 1373 ........................................................................................................... *passim*

Fed. R. Civ. P.
   12(b)(1) .................................................................................................................. 5
   12(b)(6) .................................................................................................................. 5

**Other Authorities**

Michael Coleman, *Mayor Berry: Albuquerque Is Not A "Sanctuary City,"*
   Albuquerque J. (Aug. 3, 2017, 11:48 PM), https://goo.gl/hd6ENQ ....................... 12

Executive Order No. 13,768,
   82 Fed. Reg. 8799 (Jan. 25, 2017) ............................................................... *passim*

Trevor W. Morrison, *Stare Decisis in the Office of Legal Counsel,*
   110 Colum. L. Rev. 1448 (2010) .......................................................................... 7

Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from
the Office of Legal Counsel,*
   52 Admin. L. Rev. 1303 (2000) ............................................................................ 7

Pub. Affairs, Press Release, *Attorney General Sessions Announces Immigration
Compliance Requirements for Edward Byrne Memorial Justice Assistance
Grant Programs* (July 25, 2017), https://goo.gl/51qv3T ...................................... 21

*Sanctuary Cities*, U.S. Dep't of Justice (Aug. 16, 2017), https://goo.gl/Z7y3Wd ...................... 13

*Trump Administration Again Pressures Sanctuary Cities*, CNNPolitics (July 25,
   2017), https://goo.gl/dZ1g7q .............................................................................. 12

U.S. Const. art. I, § 8, cl. 1 ....................................................................................... 22

Billy J. Williams, *Oregon's Sanctuary Status Threatens Public Safety and Law
Enforcement Funding*, Oregonian (Aug. 6, 2017, 1:28 PM),
   https://goo.gl/wo3NiR ......................................................................................... 13

vi

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS     **PETER S. HOLMES**
CASE NO. 1:17-CV-00497-RAJ     Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

## INTRODUCTION

On January 25, 2017, Defendant Donald J. Trump signed Executive Order 13,768 ("the Order"), directing that federal funds be withheld from states and municipalities that have established so-called "sanctuary city" policies limiting local cooperation with federal immigration authorities. The cities of Seattle and Portland ("the Cities") are two such municipalities. By its plain terms, the sloppily drafted Order threatens the Cities—and all similarly situated jurisdictions—with the loss of all federal grants, unless they abandon their policies and assist Defendants in enforcing federal immigration law; the Order has already begun to disrupt the Cities' budgetary processes. The Order is, the Cities submit, unconstitutional; it violates the U.S. Constitution's Tenth Amendment, Spending Clause, and Take Care Clause.

In defending the constitutionality of the Order, Defendants now argue that the Order does not mean what it plainly says. Defendants' submission is that a brief, conclusory, and unreasoned memorandum issued by the Attorney General ("the Sessions Memorandum") conclusively establishes that the Order—although executed by Defendant Trump with great fanfare—actually has no legal force at all, creating no new legal authority or obligations. The Order cannot be unconstitutional, Defendants conclude, because it means nothing and does nothing.

But as another federal court recently held in rejecting an identical contention, Defendants are wrong. The Executive Branch may not escape the consequences of issuing a manifestly unconstitutional order by mischaracterizing what the Order says and was expressly designed to accomplish; if Defendants wish to narrow and correct the Order, they should do so candidly and directly.[1] As it stands, the Order is unconstitutional.

That was the conclusion of the only other court to have considered the Order's legality, laid out over the course of two lengthy, well-reasoned decisions. *See Cnty. of Santa Clara v. Trump*, 2017 WL 1459081 (N.D. Cal. Apr. 25) ("*Santa Clara I*"), *reconsideration denied*, 2017

---

[1] Notably, Defendant Trump did not issue a new or revised executive order adopting the views espoused in the Sessions Memorandum. This approach stands in stark contrast to his response to adverse judicial decisions enjoining an Executive Order barring the entry of nationals from several Muslim-majority countries. *See Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2083-84 (2017) (discussing history of the executive orders).

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

WL 3086064 (N.D. Cal. July 20, 2017) ("*Santa Clara II*"). That court first held in *Santa Clara I* that claims virtually identical to those asserted here warranted preliminary injunctive relief; in *Santa Clara II*, the court held that conclusion unaffected by the Sessions Memorandum, ruling that the allegations in the *Santa Clara* plaintiffs' complaint were more than sufficient to survive dismissal. Defendants' Motion to Dismiss ("MTD") in this case is substantially identical to the arguments rejected in *Santa Clara*.

This Court should follow the *Santa Clara* court's persuasive reasoning and hold that the Cities have stated an actionable claim against the Order. We begin by explaining why the unpersuasive, non-binding Sessions Memorandum has no effect on the Cities' claims. We then show that neither standing nor ripeness bars the Cities' claims in light of the injuries the Cities have already begun to suffer. And, finally, we demonstrate that each of the claims pleaded in the Cities' First Amended Complaint ("FAC") should survive the MTD on the merits. Thus, Defendant's motion should be denied in its entirety.

## **BACKGROUND**

The cities of Seattle and Portland—like hundreds of other municipalities around the country (FAC ¶ 47)—have enacted policies that prevent city officials from collecting immigration information about city residents, thereby encouraging immigrants to participate in civic life. Local law enforcement and public health officials have concluded with near unanimity that communities are safer, healthier, and more economically prosperous when immigrants can report crimes, seek medical care, and contribute to the economy without fear of immigration consequences. *Id.* ¶¶ 46-59. In the Cities' view, employing local funds and local officials to enforce federal civil immigration law would have a deleterious effect not only on immigrants, but on the community as a whole.

The Cities have therefore established policies that prevent public officials from inquiring into an individual's immigration status or taking action against an individual based solely on that

2

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

status. *See* FAC ¶¶ 18-45. In 2003, Seattle adopted Ordinance 121063 (*id.* ¶ 24), which bars Seattle employees from "inquir[ing] into the immigration status of any person, or engag[ing] in activities designed to ascertain the immigration status of any person" (*id.* ¶ 25), unless the employee is a police officer with reason to believe the person has returned to the United States after deportation and is engaged in criminal activity (*id.* ¶ 26). As required by the State of Oregon (*id.* ¶ 37), Portland has a similar provision, City Resolution 37277, which "prohibits the use of City funds, personnel or equipment to enforce federal immigration law" (*id.* ¶ 41). At the same time, however, both Seattle and Portland permit municipal employees to cooperate with federal immigration authorities as required by law. *Id.* ¶¶ 30, 41.

It is just such policies that the Order is designed to change. On January 25, 2017, Defendant Trump signed the Order, titled "Enhancing Public Safety in the Interior of the United States." *See* Executive Order No. 13,768, 82 Fed. Reg. 8799 (Jan. 25, 2017). The Order directs the Secretary of Homeland Security to designate so-called "sanctuary jurisdictions," which it identifies as those that "willfully refuse to comply with 8 U.S.C. 1373." Order § 9(a). That statute provides that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." The Order then directs the Attorney General to ensure that such jurisdictions "are not eligible to receive federal grants" and to take "appropriate enforcement action" against entities that violate 8 U.S.C. § 1373 or employ a "statute, policy, or practice that prevents or hinders the enforcement of federal law." Order § 9(a).

Neither the Order nor any other source of federal law defines "willful" as used in this context or explains what acts or practices rise to the level of "prevent[ing] or hinder[ing] the enforcement of federal law." *Id.* The terms "sanctuary jurisdiction" and "sanctuary city" are themselves not defined, either in the Order or in any other provision of federal law. *See, e.g.*,

3

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 573 (5th Cir. 2013) ("Congress passed no law concerning … 'sanctuary cities.'"); *United States v. Juarez-Escobar*, 25 F. Supp. 3d 774, 777 (W.D. Pa. 2014) ("There is very little 'official' information concerning 'sanctuary cities' or 'sanctuary states.'").

Although Seattle and Portland firmly believe that their sanctuary policies do not violate federal law, repeated threats from Defendant Trump and other federal officials suggest that the Cities will be treated as "sanctuary jurisdictions" under the Executive Order. FAC ¶¶ 128-46. Defendant Trump has referred to Seattle as a sanctuary city numerous times (*id.* ¶¶ 131-33), and counties in and around both Seattle and Portland have appeared on multiple federal reports identifying jurisdictions that purportedly do not comply with immigration authorities (*id.* ¶¶ 142, 144-45). The Cities are therefore likely to be subjected to the full coercive force of the Order.

Such targeting would impose devastating burdens on the Cities and their residents. Both Seattle and Portland currently receive many millions of dollars annually in federal funds. FAC ¶¶ 60-96. Those funds support essential public safety and community needs, ranging from home care for the disabled elderly to nutrition assistance for needy children. *Id.* The prospect of losing funding has already harmed the Cities, as it affects the choices that they are now making in determining the allocation of funds in their annual budgets. *Id.* ¶¶ 147-54.

Perhaps recognizing the untenable reach of the Order, and in response to the *Santa Clara I* decision enjoining enforcement of the Order, Defendant Sessions issued a memorandum purporting to limit its scope. Specifically, the Sessions Memorandum—which is issued solely under the authority of the Attorney General, not the Secretary of Homeland Security (FAC ¶ 119)—purports to limit the Order to grants administered by the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") (*id.* ¶ 120). It also parrots the language of the Order by characterizing "sanctuary jurisdictions" as jurisdictions that "willfully refuse to comply with 8 U.S.C. 1373" (*id.* ¶ 123), although it does not define "willful[]" noncompliance or

4

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

purport to state the scope of Section 1373. The Sessions Memorandum, like Defendant's previous representations to the *Santa Clara* court, thus "attempts to read out all of Section 9(a)'s unconstitutional directives to render it an ominous, misleading, and ultimately toothless threat." *Santa Clara I*, 2017 WL 1459081, at *9.

## LEGAL STANDARD

Defendants move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Cities lack standing and that their claims are not ripe. "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "The Court may not speculate as to the plausibility of the plaintiffs' allegations." *Id.*

Defendants also move to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), courts must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). Dismissal is "inappropriate unless the complaint fails to 'state a claim to relief that is plausible on its face.'" *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. THE SESSIONS MEMORANDUM DOES NOT AND CANNOT LIMIT THE SCOPE OF THE EXECUTIVE ORDER.

Defendants' motion to dismiss turns almost entirely on the proposition that the Sessions Memorandum "conclusively establishes the scope of Section 9(a)" of the Order—and that the Order is impervious to constitutional challenge because, according to the Sessions Memorandum, the Order has no legal force at all. MTD at 1, 7. But that defense of the Order is insupportable. As the *Santa Clara* court explained in rejecting Defendants' identical argument in that litigation, the Sessions Memorandum is not an authoritative narrowing of an otherwise

5

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

unconstitutional order; the Sessions Memorandum "is directed only to grant-making components within [the Department of Justice], is labeled as an 'implementation' memorandum, is only two pages long, does not engage in substantive legal analysis, and primarily outlines plans to enforce the order, rather than an opinion on its meaning or scope." *Santa Clara II*, 2017 WL 3086064, at *7. This Court should also reject the Sessions Memorandum's purported narrowing and re-writing of the Order.

### A. The Sessions Memorandum Is Not Legally Binding, Does Not Purport To Bind Other Federal Agencies, And May Be Revoked At Will.

Unlike executive orders, informal guidance documents like the Sessions Memorandum lack the force of law. *See Santa Clara II*, 2017 WL 3086064, at *4. The Sessions Memorandum, moreover, may be revoked or modified at any time. *See id.* at *8; *see also, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015) (holding that interpretive rules can be revoked without notice-and-comment rulemaking). And there is good reason to regard that as a realistic prospect: The Sessions Memorandum was issued in immediate response to a legal defeat in a related case, and "even if authoritative and binding," it may not "persist past the immediate stage of these proceedings." *Washington v. Trump*, 847 F.3d 1151, 1166 (9th Cir. 2017). Accordingly, the Sessions Memorandum "is functionally an 'illusory promise' to enforce the Executive Order narrowly, and, as such, does not resolve the constitutional claims that the [Cities] have brought based on the Order's language." *Santa Clara II*, 2017 WL 3086064, at *8.

And that is not all. Even if the Sessions Memorandum binds the Department of Justice, it does not bind other federal agencies. Although the Sessions Memorandum states that the Attorney General consulted in its drafting with the Secretary of Homeland Security—who is the official actually tasked in the Order with identifying sanctuary jurisdictions, *see* Order § 9(a)—it is issued solely under the Attorney General's name. And, by its own terms, the Sessions Memorandum was issued only to Department of Justice grant-making components; it does not even purport to notify grant-making components of other federal agencies. Defendants' claim

6

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

that the Sessions Memorandum governs the entire federal bureaucracy is thus baseless.

Defendants' attempts in the MTD to puff up the force of the Sessions Memorandum do not advance their argument. Relying on *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434 (1995), Defendants claim that "the Attorney General's legal opinions are treated as authoritative by the heads of executive agencies." MTD at 7. But in *Tenaska Washington Partners*, the relevant memorandum was authored not by the Attorney General, but by the Office of Legal Counsel ("OLC")—the office in the Department of Justice that provides authoritative legal advice to the President and Executive Branch agencies—and was issued after "an extensive research, review, and refinement period, with input from several divisions and other offices." *Id.* This lengthy deliberative process stands in sharp contrast to that producing the Sessions Memorandum—a two-page, litigation-driven document that is wholly devoid of legal analysis. Defendants also cite to a law review article, but the author of that article ultimately concludes that "the question of whether (and in what sense) the opinions of the Attorney General, and, more recently, the Office of Legal Counsel, are legally binding within the executive branch remains somewhat unsettled." Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1318 (2000); *see also* Trevor W. Morrison, *Stare Decisis in the Office of Legal Counsel*, 110 Colum. L. Rev. 1448, 1465 (2010) ("[L]egal advice obtained from an office other than OLC—especially an agency's own general counsel—is unlikely to command the same respect as OLC advice."). Finally, Defendants invoke 8 U.S.C. § 1103(a)(1), which provides that a "determination and ruling by the Attorney General with respect to all questions of law [related to the immigration and naturalization of aliens] shall be controlling." But that statute is wholly inapposite here: The Sessions Memorandum is not a "determination" or "ruling" on a question of immigration law. Indeed, the Sessions Memorandum's subject line states that it is an "Implementation" of the Executive Order, and its text repeatedly uses language reflecting "plans to enforce the order"

7

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

rather than "an opinion on its meaning or scope." *Santa Clara II*, 2017 WL 3086064, at \*7.

In sum, the Sessions Memorandum was not issued pursuant to any statutory or regulatory provision authorizing the Attorney General to interpret the Order and bind federal agencies. It is, at most, an interpretive rule. Accordingly, it is entitled only to "respect proportiona[te] to its 'power to persuade.'" *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). And that is utterly lacking: The Sessions Memorandum's brevity, its lack of rigorous legal reasoning, and its issuance in response to a preliminary injunction demonstrate that it is "nothing more than a 'convenient litigating position,' . . . advanced by an agency seeking to defend past [government] action against attack." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)). This Court should afford it no deference.

### B. The Sessions Memorandum Is Not Binding Because It Contradicts The Executive Order's Plain Text.

In addition, the Sessions Memorandum should be disregarded for the further reason that it is contrary to the Executive Order's plain terms. "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)). And just as a regulation cannot trump the unambiguous text of a statute, an Executive Branch memorandum cannot override the plain language of an Executive Order. *Cf. Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 190-91 (1999) (assuming that principles of statutory interpretation apply to Executive Orders); *Cherichel v. Holder*, 591 F.3d 1002, 1016 n.17 (8th Cir. 2010) (explaining that even if an OLC opinion were binding on federal agencies, it does not bind the courts). The Sessions Memorandum impermissibly contradicts the Order's plain text in numerous respects.

*First*, Section 9(a) of the Order provides flatly that sanctuary jurisdictions "are not eligible to receive Federal grants." Order § 9(a). Despite this clear command, the Sessions

8

---

Memorandum purports to limit Section 9(a)'s application "solely to federal grants administered by the Department of Justice or the Department of Homeland Security, and not to other sources of federal funding." MTD Ex. 1 at 1. This limitation appears nowhere in the text of the Order, which is unencumbered by any language limiting its scope to the Departments of Justice and Homeland Security.

*Second*, the Order contains a single exception to its defunding mandate: it excludes grants "deemed necessary for law enforcement purposes." Order § 9(a). The Sessions Memorandum turns this exception on its head. Under the Sessions Memorandum, the *only* grants covered by the Order are those related to law enforcement. Put differently, despite the Order's recognition that law-enforcement grants should continue notwithstanding a city's status as a "sanctuary jurisdiction," the Sessions Memorandum cuts off that funding while purportedly exempting every *other* source of federal funding from the Order's strictures. *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980) (explaining that when a statute "explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied").

*Third*, Section 9(c) of the Order directs the Office of Management and Budget ("OMB") "to obtain and provide relevant and responsive information on *all* Federal grant money that currently is received by any sanctuary jurisdiction." Order § 9(c) (emphasis added). If the Order were truly limited to grants issued by the Departments of Justice and Homeland Security, Section 9(c)'s requirement that OMB collect information regarding "*all* Federal grant money," *id.* (emphasis added), would be pointless. *Cf. United States v. Cabaccang*, 332 F.3d 622, 631 (9th Cir. 2003) (en banc) ("Whenever possible, we interpret statutes so as to preclude absurd results.") (quotation marks omitted). And if the Order were as circumscribed as the Sessions Memorandum suggests, Section 9(c)'s use of the word "all" would be superfluous. *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading which renders some words altogether redundant."); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (discussing

9

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

the "rule against superfluities").

*Finally*, the Order's text must "be construed consistently with the Order's 'object and policy.'" *Bassidji*, 413 F.3d at 934 (quoting *Nw. Forest Res. Council,* 82 F.3d at 830). The Order's stated purpose is to "[e]nsure," without limitation, "that jurisdictions that fail to comply with applicable Federal law do not receive federal funds." Order § 2(c). The Sessions Memorandum's interpretation ignores the Order's announced purpose and purports to drastically limit its scope.

Because the Sessions Memorandum may not limit the clear scope of the Order, this Court should assume the Order means what it says and that all sources of federal funding are implicated if a city is labeled a sanctuary jurisdiction.[2]

## II.     THE CITIES' CLAIMS ARE JUSTICIABLE.

Defendants invoke two justiciability doctrines as a bar to the Cities' suit: standing and ripeness. MTD at 16. Many of these arguments were expressly rejected by the court in *Santa Clara I* and *II. See, e.g.*, *Santa Clara I*, 2017 WL 1459081, at *6. In this case, Defendants largely rehash, at length, their arguments about the Sessions Memorandum that they presented unsuccessfully in the *Santa Clara* litigation. The allegations in the Complaint plainly establish that the Cities face a number of concrete current and future injuries caused by the Order, notwithstanding the claims made in the Sessions Memorandum, and have therefore shown both standing and ripeness.

### A.     The Cities Have Standing.

The Cities' allegations satisfy the three elements of Article III standing: an "injury in fact," "fairly traceable to the challenged action of the defendant," that "will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotations and

---

[2]      This is not to say that *all* aspects of the Order are unambiguous. For example, the Order's definition of "sanctuary jurisdiction" is hopelessly vague. The Sessions Memorandum has not corrected that problem, nor has it clarified what (in the Justice Department's view) constitutes compliance with Section 1373. *See* FAC ¶ 124.

10

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

alterations omitted). It is by now axiomatic that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561).

Defendants seemingly do not contest causation or redressability, instead claiming only that "the Cities' alleged injuries are too speculative to meet the constitutional standing requirement." MTD at 15. But the allegations in the Complaint establish that the Cities face *three* injuries sufficient to confer standing: impairment of their constitutional authority, budgetary uncertainty, and the loss of millions in federal funding. None of these concerns are "speculative."

> 1.    The Order impairs the Cities' constitutional authority.

For starters, the Cities face injury to their constitutional interest in governing their own affairs and protecting their residents' interests. A plaintiff asserting constitutional injury has standing where it "intends to engage in a course of conduct arguably affected with a constitutional interest" and "there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000). Faced with such a threat, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).

Because the Executive Order seeks to compel the Cities "to change their policies and enforce the Federal government's immigration laws in violation of the Tenth Amendment, their claims implicate a constitutional interest." *Santa Clara I*, 2017 WL 1459081, at *17; *see also* FAC ¶¶ 46-59 (explaining the benefits provided by sanctuary policies). There is no question that cities, like States, have a constitutional interest in "the exercise of sovereign power over individuals and entities within the relevant jurisdiction," which "involves the power to create and enforce a legal code, both civil and criminal." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). As the Ninth Circuit recently explained, imposition of restrictions on an entity's "inherent sovereign authority" is the kind of "concrete and

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

particularized" injury in fact that suffices to justify a pre-enforcement challenge, especially where the challenged conduct is alleged to harm the entity's "ability to maintain peace and security." *Bishop Paiute Tribe v. Inyo Cty.*, -- F.3d --, 2017 WL 3044643, at \*6 (9th Cir. July 19, 2017); *see also Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011) ("when a federal law interferes with a state's exercise of its sovereign 'power to create *and enforce* a legal code' … it inflict[s] on the state the requisite injury-in-fact.") (quotation omitted).

Defendants' actions have created a "credible threat" to that interest. The Cities "are likely to be designated 'sanctuary jurisdictions' under their reasonable interpretation of the Executive Order." *Santa Clara I*, 2017 WL 1459081, at \*14. Like San Francisco and Santa Clara, Seattle and Portland have policies that restrict their cooperation with federal immigration authorities, and that could plausibly could be regarded as "sanctuary" policies under the Order. *See FAC* ¶¶ 18-45. Moreover, Defendant Trump and other federal officials have repeatedly promised to "punish so-called sanctuary cities," giving ample reason to believe that they will enforce the Order. *See id.* ¶¶ 128-46. Indeed, Defendant Trump has identified Seattle in particular as a sanctuary city that would be a target of the administration's policies (*id.* ¶¶ 131-33), and multiple reports issued by the Department of Homeland Security have identified the counties in which the Cities are located as jurisdictions that refused to cooperate with federal immigration authorities (*see id.* ¶¶ 142, 144-45). In sum, "[a]lthough the Government now takes the position that the Order carries no legal force, in its public statements and through its actions it has repeatedly indicated its intent to enforce the Order." *Santa Clara I*, 2017 WL 1459081, at \*14.[3]

---

[3]     These threats have continued unabated since the Cities filed the FAC. On July 25, Defendant Trump declared that his administration "is launching a nationwide crackdown on sanctuary cities"—the same day that Defendant Sessions announced that applicants for DOJ grants would be "required to certify that they'll cooperate with federal immigration enforcement more extensively than in the past." Tal Kopan, *Trump Administration Again Pressures Sanctuary Cities*, CNNPolitics (July 25, 2017), https://goo.gl/dZ1g7q. In a statement on August 3, Defendant Sessions referred to a crime committed by a noncitizen in Portland, and described Portland as "a city that refuses to cooperate with immigration enforcement." Michael Coleman, *Mayor Berry: Albuquerque Is Not A "Sanctuary City*," Albuquerque J. (Aug. 3, 2017, 11:48 PM), https://goo.gl/hd6ENQ. Defendant Sessions mentioned that same Portland crime again just last Wednesday, August 16, in a speech in Miami; he closed by asserting that "we cannot continue giving federal taxpayer money to cities that actively undermine the safety and efficacy of

12

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

2.     *The Order creates budgetary uncertainty for the Cities.*

The profound budgetary uncertainty caused by the Order also gives rise to standing. The possible loss of millions of dollars in federal funding "disrupt[s] [the Cities'] ability to budget, make decisions regarding what services to provide, and plan for the future." *Santa Clara I*, 2017 WL 1459081, at *19; *see also Bishop Paiute Tribe*, 2017 WL 3044643, at *7 (identifying "misunderstanding and confusion" as an injury). Seattle's budget process for 2018 is well underway, with a proposed budget for the year due to the City Council by September 25. FAC ¶ 149. Portland recently adopted its 2017-2018 budget—which it cannot amend to account for the sudden loss of federal funding—and its 2018-2019 budget process will soon begin. *Id.* ¶ 150. The potential loss of federal funding therefore disrupts budgeting processes in both cities.

Defendants make a number of unavailing responses. The injury suffered by the Cities does not rest on "conjecture" (*cf.* MTD at 15)—it is a direct consequence of Defendants' actions. Defendants also claim that the Order "does not expand" their authority to strip the Cities of federal funding (MTD at 15-16), but it plainly imposes conditions on federal funding that did not exist before it was promulgated. Finally, Defendants rip a sentence from an explanatory parenthetical to support the broad claim that general threats of enforcement do not give rise to standing. *Id.* at 16 (citing *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)). But the Cities have alleged far more—that Defendants' many credible threats to jurisdictions like the Cities have given rise to understandable uncertainty about the future availability of federal grants. This uncertainty, which affects decisions currently being made about city expenditures, constitutes injury in fact.

---

federal law enforcement and actively frustrate efforts to reduce crime in their cities." *Attorney General Sessions Delivers Remarks on Sanctuary Cities*, U.S. Dep't of Justice (Aug. 16, 2017), https://goo.gl/Z7y3Wd. Finally, the U.S. Attorney for the District of Oregon stated in an editorial that "federal funding for local law enforcement" in Oregon has been put at risk by the state's sanctuary policies. Billy J. Williams, *Oregon's Sanctuary Status Threatens Public Safety and Law Enforcement Funding*, Oregonian (Aug. 6, 2017, 1:28 PM), https://goo.gl/wo3NiR.

13

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

3.     *The Order, if enforced, will likely cause the Cities to lose federal grants.*

That abiding uncertainty is, in turn, the present result of an imminent future injury: the potential loss of millions of dollars in federal funding. There is no question that the "loss of funds promised under federal law" constitutes injury in fact. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 965 (9th Cir. 2015) (citing *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 161 (1981)). Seattle stands to lose over $155 million in 2017 (FAC ¶ 61); Portland, around $29 million (*id.* ¶ 83). That injury is "certainly impending," not "speculative." *Cf.* MTD at 15. As we have explained, Defendants' multiple threats against the Cities give rise to a credible fear of enforcement. This potential future injury therefore also supports standing.

**B.     The Cities' Claims Are Ripe For Judicial Review.**

By the same token, the Cities' claims are ripe for judicial review. Those claims are constitutionally ripe because they allege present injuries as well as threatened future injuries. The Cities' claims are likewise prudentially ripe—assuming the doctrine of prudential ripeness retains its vitality—because the purely legal issues presented by those claims require no further factual development, and because delaying review of the Cities' claims would only compound the injuries they have suffered.

1.     *The Cities' claims are constitutionally ripe.*

Given that the Cities have shown injury in fact, the Cities' claims are *constitutionally* ripe. "Constitutional ripeness is often treated under the rubric of standing because 'ripeness coincides squarely with standing's injury in fact prong.'" *Bishop Paiute Tribe*, 2017 WL 3044643, at *6 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). Because the inquiry is the same—whether the issues are "definite and concrete, not hypothetical or abstract"—the Cities' claims are ripe for the same reasons that the Cities have standing. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

Defendants maintain that the Cities' claims are unripe under the three-factor test stated in

14

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*Thomas*, 220 F.3d at 1138-39, which considers a plaintiff's plan to violate a regulation, as well as any threatened or actual enforcement actions. *See* MTD at 11. But the Ninth Circuit's decision in *Thomas* "did not purport to overrule years of Ninth Circuit and Supreme Court precedent recognizing the validity of pre-enforcement challenges to statutes infringing upon constitutional rights." *Cal. Pro-Life Council*, 328 F.3d at 1094. Moreover, *Thomas* is inapplicable where a plaintiff alleges that it has already begun to suffer injury, as is the case here. *See, e.g.*, *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) (dispute ripe where "injury ha[d] already occurred, thereby eliminating any concerns that Plaintiffs' fear of enforcement is purely speculative"); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("Because CPLC has suffered an injury as a result of the alleged unconstitutional statute, CPLC's claim is necessarily ripe for review."); *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1007 n.6 (9th Cir. 2003) ("[O]ur conclusion that ARLPAC has suffered actual harm dispenses with any ripeness concerns."). As explained above, the Cities face multiple *current* injuries, including limitations on their sovereign authority, profound budgetary uncertainty, and the need to make budgetary decisions now that will not be remediable in the future.

Regardless, the Cities have made the showing described in *Thomas*.[4] *First*, the Cities have shown a "concrete plan" to violate the Order by continuing to maintain their sanctuary city policies. The Complaint describes the Cities' current policies at length, which the Cities believe are "critical in helping reduce crime, maintaining a healthy populace, and safeguarding public funds." FAC ¶ 46. Indeed, the "concrete plan" requirement is satisfied where, as here, a plaintiff has already begun to violate a statute or regulation. *See, e.g.*, *Oklevueha Native Am. Church of Hawaii*, 676 F.3d at 836; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1123 (9th Cir. 2009). Defendants try to place the Cities in a Catch-22 by noting that the Cities "contend that they

---

[4]    Defendants also claim that "the Executive Order does not confer on any Executive Branch official any new authority," citing the Sessions Memorandum. MTD at 12. As explained above, that argument fails. *See supra* Part I.

15

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

comply with Section 1373" (MTD at 12), but that misses the point: the Cities worry that they will lose funding by violating the *overbroad and incorrect* interpretation of Section 1373 espoused by the Justice Department.

*Second*, the Complaint is replete with allegations regarding the Defendants' unlawful threats to strip the Cities of federal funding. *See supra* at 12-13. Those threats include the listing of the Cities on DHS Declined Detainer Outcome Reports (*see id.* ¶¶ 142, 144-45), which "raises the reasonable concern" that each City "may be designated a sanctuary jurisdiction, and subject to defunding, if it fails to honor ICE detainer requests" (*Santa Clara I*, 2017 WL 1459081, at *13), even if inclusion on the reports does not "automatically" lead to defunding. MTD at 12-13. They also include specific statements about the Cities' own sanctuary policies. *See* FAC ¶¶ 131-33. Moreover, in addition to threats made to Seattle and Portland individually, the Court may also consider Defendants' repeated threats to sanctuary cities generally, a category that includes both Seattle and Portland. *See* FAC ¶¶ 129-30, 134-40; *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) ("we have never held that a specific threat is necessary").

*Third*, although "[a] lack of enforcement history is not a compelling reason to find [the Cities'] claims unripe," given how recently the Order was promulgated (*see Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 833 (9th Cir. 2016)), Defendants have already shown that they are willing to vigorously enforce the Order. Since the Cities filed the FAC, the administration announced that it would begin stripping sanctuary cities of grants administered by the Department of Justice, which both Seattle and Portland receive. *See infra* at 21. And that is just one element of Defendants' attempts to unlawfully punish sanctuary cities. *See* FAC ¶ 141.

> ## 2.   The Cities' claims are prudentially ripe.

Defendants also invoke prudential ripeness as a barrier to the Cities' suit. The prudential ripeness inquiry looks to "the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

---

16

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

The Supreme Court, however, has criticized the doctrine of prudential ripeness as "in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List*, 134 S. Ct. at 2347 (quotation omitted); *see also Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (declining to address prudential ripeness). Moreover, "[p]rudential considerations of ripeness are discretionary." *Thomas*, 220 F.3d at 1142.

Regardless, the Cities' claims are prudentially ripe as well. The Cities' claims present a "sufficiently crystallized dispute that is ripe" for judicial review. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 856 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002). "[T]he issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Wolfson*, 616 F.3d at 1060. Waiting for the federal government to remove funding would do little to clarify the constitutional issues at stake. That "the new rules may undergo some amendment or agency construction" does not render this dispute unfit for review; whether the Cities' policies "would directly violate the new rules" remains a "primarily legal" inquiry, as does the constitutionality of any enforcement action. *Stormans, Inc.*, 586 F.3d at 1126. And we have already explained why the Attorney General's "guidance" concerning the Order is both unpersuasive and irrelevant. *See infra* Part I.

Defendants assert that the Cities' claims turn on "contingent future events" (MTD at 14), but such events "are always at issue in a pre-enforcement case; before actual enforcement occurs the enforcing agency must determine what the statute means and to whom it applies." *Santa Clara I*, 2017 WL 1459081, at *20. The Ninth Circuit has explained that the mere fact "[t]hat a contingency is involved is not fatal to ripeness," when "common sense indicates that review should be afforded even though the ultimate injury to the complaining party depends on the occurrence of further events." *Sandell v. F.A.A.*, 923 F.2d 661, 664 (9th Cir. 1990); *see also In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (holding that dispute was ripe even though it

---

17

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

turned on a factual contingency). Moreover, the contingencies that Defendants identify here are highly likely to occur, given Defendants' own repeated statements attacking the Cities and other jurisdictions with sanctuary policies.

Postponing review of the Cities' claims would also substantially harm the Cities and their residents. A dispute is ripe where governmental action "requires an immediate and significant change in plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Nat'l Inst. of Family & Life Advocates*, 839 F.3d at 833 (quoting *Stormans*, 586 F.3d at 1126). That is the case here: "[w]ithout clarity the [Cities] do not know whether they should start slashing essential programs or continue to spend millions of dollars and risk a financial crisis in the near future." *Santa Clara I*, 2017 WL 1459081, at *21.[5] Defendants' assertion that the Cities' claims involve "contingencies," and Defendants' reliance on the Sessions Memorandum, are both simply more of the same. MTD at 14-15. In sum, "[w]aiting for the Government to decide how it wants to apply the Order would only cause more hardship and would not resolve the legal question at issue: whether Section 9(a) as written is unconstitutional." *Santa Clara I*, 2017 WL 1459081, at *21.

## III.     THE CITIES HAVE STATED A CLAIM FOR DECLARATORY RELIEF.

In their Complaint, the Cities ask for a declaratory judgment that they comply with Section 1373 to stave off any threat of future enforcement and resolve the palpable budgetary uncertainty they now face. As the court explained in *Santa Clara II*, "[t]he Declaratory Judgment Act permits [them] to seek declaratory relief to resolve this 'real and substantial' legal dispute." 2017 WL 3086064, at *12.

---

[5]     Defendants' reliance on *Abbott Labs.*, 387 U.S. at 154, to controvert this point is puzzling. That case *rejected* the government's argument that plaintiffs' claims were unripe because "the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions." *Id.* That is precisely the case here. Moreover, it is simply wrong to say that the hardship suffered by the Cities is solely financial; the loss of federal grants will cripple city governance and essential city programs, unless the Cities abandon policies they believe benefit their residents.

18

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

Defendants object that the Cities have not identified a cause of action, but Defendants misunderstand the nature of declaratory relief. "[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (quoting *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990)). Defendants could, among other things, bring a civil action asserting that the Cities' policies are preempted by Section 1373. The Cities simply seek a declaratory judgment that any such suit would be unavailing. After all, "[t]he Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (quoting *Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966)). That description fits this case like a glove.

Defendants also rehash their standing and ripeness arguments, asserting that the Cities raise only a "hypothetical legal dispute" because Defendants "have not designated the Cities as 'sanctuary jurisdictions.'" MTD at 17-18. But in light of the many threats made to the Cities—and to sanctuary jurisdictions generally—by federal officials, Defendants cannot seriously dispute that "an actual controversy" exists about the Cities' compliance with Section 1373. MTD at 17. As we have explained, the Cities face a threat of imminent enforcement, producing current harm—which is more than enough to merit declaratory relief. *See infra* Part II.

## IV.    THE CITIES HAVE STATED A TENTH AMENDMENT CLAIM.

"[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997); *see also New York v. United States*, 505 U.S. 144, 188 (1992). "That is true whether Congress directly commands a State to regulate or indirectly coerces a State to adopt a federal

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

regulatory system as its own." *Santa Clara I*, 2017 WL 1459081, at *24 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012) ("*NFIB*")). This "anti-commandeering principle" prohibits the federal government from forcing a State or municipality to make a change in policy or even to make a policy determination. *See, e.g.*, *Printz*, 521 U.S. at 925-28.

Yet that is exactly what the Order purports to do. By threatening to cut federal funds and to initiate enforcement action, the Order requires the Cities to change their longstanding practices of not inquiring into an individual's immigration status, impermissibly undermining local policy determinations. The Order is thus proscribed by the Tenth Amendment's anti-commandeering principle. *See Santa Clara I*, 2017 WL 3086064 at *17; *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1365 (9th Cir. 1998) (Kozinski, J, concurring) ("There is a plausible argument that Congress may not interfere with the functioning of state officials and instrumentalities by endowing them with powers and duties that conflict with their responsibilities under state law.").

In response, Defendants invoke the Sessions Memorandum to insist that "the Executive Order does not directly impose any affirmative duties on state or local jurisdictions." MTD at 19.[6] But this argument disregards the import of the Order's plain text, as well as its inevitable practical impact: The Order both imposes penalties on any jurisdiction that fails to comply with Defendants' construction of Section 1373 and directs the Attorney General to "take appropriate enforcement action against any entity that . . . has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law." Order § 9(a). The Order thus effectively requires municipalities to assist in enforcement of the federal government's immigration program. And Defendants' related contention that "the Attorney General and the Secretary are to enforce the Order's directives only 'to the extent permitted by law'" (MTD at 19 (quoting Order

---

[6]     In a similar vein, Defendants contend that the Order cannot be challenged because it is "an internal Executive Branch policy directive." MTD at 20. But, yet again, this argument is premised on the Sessions Memorandum's limitation of the Order. For the reasons given above, *see supra* Part I, the Sessions Memorandum cannot and does not limit the Executive Order.

20

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

§ 9(a)) already has proved illusory as a limit on the scope of the Order: separate litigation recently initiated both by Chicago and by California and San Francisco regarding the award of Department of Justice Edward Byrne Memorial Justice Assistance Grants—a type of grant also received by the Cities—demonstrates that the government is insisting on compliance with grant conditions that appear nowhere in federal statutory law. *See* Compl. ¶¶ 1-11, *City and County of San Francisco v. Sessions*, No. 4:17-cv-4642 (N.D. Cal. Aug. 11, 2017); Compl. ¶¶ 1-10, *City of Chicago v. Sessions*, No. 1:17-cv-5720 (N.D. Ill. Aug. 7, 2017); *see also* Dep't of Justice, Office of Pub. Affairs, Press Release, *Attorney General Sessions Announces Immigration Compliance Requirements for Edward Byrne Memorial Justice Assistance Grant Programs* (July 25, 2017), https://goo.gl/51qv3T. For these reasons, the *Santa Clara* court properly rejected Defendants' identical argument based on the Sessions Memorandum in denying their motion to dismiss the Tenth Amendment claims. *See Santa Clara II*, 2017 WL 3086064, at *10.

Defendants also argue that dismissal is appropriate because the Cities "fail to allege that 'no set of circumstances exists under which the [Order] would be valid.'" MTD at 20 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). According to Defendants, the Cities cannot bring a facial challenge because they may choose not to accept certain federal grants and thus not be commandeered. But this argument ignores the Cities' claim that the Order is unconstitutionally coercive, *see infra* Part V, as well as the fact that the anti-commandeering doctrine has always been linked to notions of coercion. *See New York*, 504 U.S. at 175 ("Congress has crossed the line distinguishing encouragement from coercion."). Defendants' position, moreover, runs counter to the Supreme Court's guidance that "the constitutional 'applications' that [a defendant] claims prevent facial relief … are irrelevant … [if] they do not involve actual applications of the statute." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2451 (2015). Here, the Cities challenge the Order on the ground that it is *not* applying Section 1373 and thus there are no constitutional applications at issue in this case.

---

21

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

## V.     THE CITIES HAVE STATED A SPENDING POWER CLAIM.

The Executive Order also violates the restrictions on federal authority imposed by the U.S. Constitution's Spending Clause. The Spending Clause provides that Congress may expend funds to "provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Although Congress "may fix the terms on which it shall disburse federal money," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), its discretion is cabined in several significant ways. *First*, conditions on federal funds must be stated "unambiguously" so that states may "exercise their choice knowingly, cognizant of the consequences of their participation." *S. Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst*, 451 U.S. at 17); *see also NFIB*, 567 U.S. at 577 ("The legitimacy of Congress's exercise of the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the contract.") (internal quotation marks and citations omitted). *Second*, any conditions "must . . . bear some relationship to the purpose of the federal spending." *New York*, 505 U.S. at 167. Without such a "nexus," such conditions could nullify the Constitution's protections of federalism. *Id. Third*, any "financial inducement" must not be "so coercive as to pass the point at which pressure turns into compulsion." *Dole*, 483 U.S. at 211 (internal quotation marks and citations omitted).

The Order is inconsistent with each of these requirements.[7] *First*, the Order did not "unambiguously" state its conditions for receiving (or losing) federal funds at the time the Cities initially accepted those funds. As the *Santa Clara* court explained, the Order "purports to retroactively condition all 'federal grants' on compliance with Section 1373"—a requirement that "was not an unambiguous condition that the states and local jurisdictions voluntarily and

---

[7]     Defendants claim that "the Supreme Court's conditional spending jurisprudence is inapplicable here" because "the Executive Order does not impose conditions on federal grant programming." MTD at 22. But that is not so. By its own terms, the Order directs the Attorney General and the Secretary to "ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants." Order § 9(a). That is a new condition on federal spending.

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

knowingly accepted at the time Congress appropriated these funds." *Santa Clara I*, 2017 WL 1459081, at *22. The Cities therefore could not have "exercise[d] their choice knowingly, cognizant of the consequences of their participation." *Dole*, 483 U.S. at 203.

Moreover, the Order is itself fatally ambiguous. The Order declares that "sanctuary jurisdictions"—those that "willfully refuse to comply with 8 U.S.C. 1373"—are ineligible for federal funds, and also directs the Attorney General to take enforcement action against *any* entity that "has in effect a statute, policy, or practice that prevents or hinders the enforcement of federal law." Order § 9(a). As previously noted, the Order does not further define a "sanctuary jurisdiction," clarify the meaning of "willful" refusal, or provide guidance on what it means for an entity to hinder or prevent compliance with federal law. Put simply, "[t]he Order gives the [Cities] no clear guidance on how to comply with its provisions or what penalties will result from non-compliance." *Santa Clara I*, 2017 WL 1459081, at *25. The Sessions Memorandum, which simply parrots the language of the Executive Order, does not clarify these many ambiguities.

*Second*, the Order fails to satisfy the "nexus" requirement. The Executive Order targets *all* federal funds, except those "deemed necessary for law enforcement purposes by the Attorney General or the Secretary." Executive Order § 9(a). As the *Santa Clara I* court concluded, this "inverts the nexus requirement," *Santa Clara I*, 2017 WL 1459081, at *23, exempting the *only* funds that might plausibly share a nexus with the interest of enforcing immigration law. By contrast, the funds that the Order targets—those that support public housing, health, and safety for all the Cities' residents—share no particular nexus at all with immigration enforcement. Defendants attack the nexus requirement as not an "exacting standard," but that observation cannot save the Order where there is no nexus *at all* between the Order's conditions and the purpose of the federal spending. *Cf.* MTD at 23. Although the Sessions Memorandum attempts to cure this deficiency by opining that the Order applies only to law enforcement grants administered by DOJ and DHS, we have already explained why it is unpersuasive.

23

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 1:17-CV-00497-RAJ

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

*Third*, the Order's threat "to deny sanctuary jurisdictions all federal grants … is unconstitutionally coercive." *Santa Clara I*, 2017 WL 1459081, at *23. The Cities rely on millions of dollars in federal funds to support numerous essential services. FAC ¶¶ 60-96. The sudden cessation of that funding—or the failure to reimburse the Cities for funds already spent— would plunge the Cities into budgetary chaos. Indeed, the effect of the Order is already being felt, as the Cities struggle to account for their uncertain budgetary future. This is the expected— and likely desired—result of the Order, as it seeks to pressure the Cities, and many like them, to change their policies. But here, pressure has "turn[ed] into compulsion," *Dole*, 483 U.S. at 211, as the Executive Order places a financial "gun to the head" of the Cities. *NFIB*, 567 U.S. at 581. In fact, Defendants do not deny that is so if, as we maintain, the Order means what it plainly says and applies to all federal grants.

## VI.    THE CITIES HAVE STATED A CLAIM UNDER THE TAKE CARE CLAUSE.

The Order arrogates to the Executive Branch the spending power by imposing funding conditions that Congress has repeatedly declined to enact as law. Defendants counter that the Cities' Take Care Clause claim is not justiciable. But Defendants' argument ignores numerous judicial decisions adjudicating the proper allocation of powers between the political branches. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417 (1998); *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189 (2012). In fact, the *Santa Clara* district court found that the local governments in that case were likely to prevail on their separation-of-powers claim. As that court explained, "[t]he Order's attempt to place new conditions on federal funds is an improper attempt to wield Congress's exclusive spending power and is a violation of the Constitution's separation of powers principles." *Santa Clara I*, 2017 WL 1459081 at *22. This Court should similarly reject Defendants' attempt to wield power properly held by Congress.

## CONCLUSION

The Court should deny the Defendants' motion to dismiss.

24

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 984-8200

Dated: August 21, 2017                     PETER S. HOLMES
                                           Seattle City Attorney

                         By:        */s/ Peter S. Holmes*
                                    Peter S. Holmes, WSBA #15787
                                    Seattle City Attorney
                                    Gregory C. Narver, WSBA #18127
                                    Assistant City Attorney
                                    Carlton W.M. Seu, WSBA #26830
                                    Assistant City Attorney
                                    Michael K. Ryan, WSBA #32091
                                    Assistant City Attorney
                                    Gary T. Smith, WSBA #29718
                                    Assistant City Attorney
                                    SEATTLE CITY ATTORNEY'S OFFICE
                                    701 Fifth Avenue, Suite 2050
                                    Seattle, WA  98104
                                    Phone: (206) 684-8207
                                    Fax: (206) 684-8284

                                    *Attorneys for the City of Seattle, Washington*

                                    Tracy Reeve, OSB # 891123 (admitted *pro hac vice*)
                                    Portland City Attorney
                                    Denis Vannier, OSB # 044406 (admitted *pro hac vice*)
                                    Senior Deputy City Attorney
                                    PORTLAND CITY ATTORNEY'S OFFICE
                                    1221 SW Fourth Avenue, Suite 430
                                    Portland, OR 97240
                                    Phone: (503) 823-4047
                                    Fax: (503) 823-3089

                                    Kymberly Evanson, WSBA #39973
                                    PACIFICA LAW GROUP LLC
                                    1191 Second Avenue, Suite 2000
                                    Seattle, WA  98101
                                    Phone: (206) 245-1700
                                    Fax: (206) 245-1725

                                    *Attorneys for the City of Portland, Oregon*

                                    Andrew J. Pincus (admitted *pro hac vice*)
                                    Charles A. Rothfeld (admitted *pro hac vice*)
                                    Ori Lev (admitted *pro hac vice*)
                                    Travis Crum (admitted *pro hac vice*)
                                    John T. Lewis (admitted *pro hac vice*)
                                    Joshua M. Silverstein (admitted *pro hac vice*)
                                    MAYER BROWN LLP
                                    1999 K Street, NW
                                    Washington, D.C. 20006
                                    Phone: (202) 263-3000
                                    Fax: (202) 263-3300

                                    *Attorneys for Plaintiffs*

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS                    **PETER S. HOLMES**
CASE NO. 1:17-CV-00497-RAJ                                           Seattle City Attorney
                                                                    701 Fifth Avenue, Suite 2050
                                                                    Seattle, WA 98104
                                                                    (206) 984-8200

1

## <u>CERTIFICATE OF SERVICE</u>

2          The undersigned hereby certifies that a true and correct copy of the foregoing has been

3   filed using the CM/ECF system this 21st day of August, 2017 which sends electronic notice to

4   counsel of record who are registered with the CM/ECF system.

5

6                              */s/ Peter S. Holmes*
                               Peter S. Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS          **PETER S. HOLMES**
CASE NO. 1:17-CV-00497-RAJ                                 Seattle City Attorney
                                                          701 Fifth Avenue, Suite 2050
                                                          Seattle, WA 98104
                                                          (206) 984-8200